IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : 3:18-CR-00097 |
| | : |
| v. | : (Judge Mariani) |
| | : |
| ROSS ROGGIO | : (Electronically Filed) |

## BRIEF IN SUPPORT OF MOTION FOR EARLY DISCLOSURE OF *JENCKS* ACT MATERIAL

**Relevant Procedural Background**

On March 20, 2018, Ross Roggio was charged in an indictment with conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371; violations of the Arms Export Control Act, 22 U.S.C. § 2778(b) and (c); and the International Emergency Powers Act, 50 U.S.C. §§ 1702 and 1705(c); smuggling goods from the United States, in violation of 18 U.S.C. §§ 554 and 2; wire fraud, in violation of 18 U.S.C. § 1343; and money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 2. (Doc. 1). On March 23, 2018, Mr. Roggio appeared before Magistrate Judge Karoline Mehalchick for an initial appearance and arraignment, and entered a plea of "not guilty" to the charges.

The instant case is unusual and complex and involves an indictment that includes 37 Counts as well as a Criminal Forfeiture. For this reason, and because of the extensive amount of discovery initially disclosed, which includes some

10,000 emails and several thousand pages bank records and other data, Mr. Roggio filed a Motion to Designate Complex Case on September 21, 2018. (Doc. 37). That motion was granted by Order dated October 12, 2018. (Doc. 39).

The matter was originally assigned to Assistant Federal Public Defender Melinda C. Ghilardi who retired from the Federal Defender's Office on February 28, 2019. Prior to her retirement, the case was reassigned to undersigned counsel. As a result of the change in counsel, and the highly complicated nature of the matter, the pretrial motions deadline was continued a number of times and is currently set for March 29, 2019.

**Factual Background**

The allegations against Mr. Roggio are contained in the 26-page indictment which contains 37 separate counts against him. In short, Mr. Roggio is accused of unlawfully exporting defense services and defense articles to Iraq and Iraqi foreign nationals. (Doc. 1, pp. 8-9). The Indictment alleges that Mr. Roggio, together with two unindicted co-conspirators, purchased firearms parts in the United States and exported them to Iraq without having first obtained the requisite approval from the Department of State. (*Id*.). According to the Indictment, the purpose of the conspiracy was to construct and operate a factory in Iraq that manufactured and assembled fully automatic rifles. (Doc. 1, p. 9). Mr. Roggio is alleged to have, at

2

least in part, constructed and operated a firearms manufacturing plant in Iraq and to have supplied that plan with parts manufactured in the United States and improperly shipped to Iraq. (Doc. 1, pp. 10-11). These allegations and based on reports, budgets, spreadsheets, emails, et cetera, that were obtained by the Government through a search of Mr. Roggio's electronic devices (that search is the topic of a suppression motion filed of even date). (*See*, Indictment, Doc. 1, pp. 10-11).

In addition to the numerus offenses charged related to the alleged smuggling of arms parts out of the United States and into Iraq, and the construction of an arms factory in Iraq, Mr. Roggio is charged with numerous fraud offenses and money laundering. (Doc. 1, pp. 17-22). To say that the charges against Mr. Roggio are complex could not be more of an understatement. This matter involves a novel area of the law and presents issues not commonly confronted in the mainstream of federal criminal practice. It involves witnesses located throughout the world and alleged global transactions. A simple reading of the indictment indicates Mr. Roggio is left in the dark as to the witnesses and evidence that will be presented against him at trial. Discovery provided thus far has shed little light on those questions making proper trial preparations almost impossible.

**Argument**

The *Jencks* Act, 18 U.S.C. § 3500(a), provides that a court may not order discovery of statements or reports of government witnesses or prospective government witnesses until the witness has testified on direct examination in the trial of the case. Rule 26.2 of the Federal Rules of Criminal Procedure incorporates the *Jencks* Act and provides a procedure for discovery of defense witness statements at trial or hearing.

Strict application of the *Jencks* Act violates the following constitutional guarantees:

- a. meaningful cross-examination and confrontation of government witnesses—The Defendant rarely knows, prior to trial, who the government witnesses are, and, therefore, cannot conduct any pretrial investigation of their character, veracity and reputation;

- b. compulsory process to secure the presence of defense witnesses—Prior to trial, the government does not disclose the existence of witnesses favorable to the Defendant;

- c. effective assistance of counsel—Literal adherence to the *Jencks* Act requires defense counsel to "shoot from the hip" and precludes careful planning of defense strategies prior to trial; and

- d. a fair trial.

Strict adherence to the *Jencks* Act, coupled with the meager discovery rules, renders ineffective any attempt to create a viable trial strategy until the weekend

prior to jury selection, when the government traditionally discloses *Jencks* Act material.

Exceptions to the *Jencks* Act's pretrial prohibition established in the criminal rules, rules of evidence and case law include: statements of witnesses called at preliminary hearings and pretrial detention hearings; grand jury testimony of government witnesses subject to the "particularized need" test; hearsay declarant statements under the residual exception; and the court's supervisory authority.

First, when a party calls a witness to testify at a proceeding under the Bail Reform Act of 1984, 18 U.S.C. § 3142, to determine whether the court should detain the defendant prior to trial, the adverse party is entitled to any relevant prior statement or report by the witness after direct examination. Fed. R. Crim. P. 46(j).

Second, the *Jencks* Act does not limit a court's authority to order pretrial disclosure of grand jury testimony of prospective government witnesses under the particularized need test. Fed. R. Crim. P. 6(e)(3)(E)(i). In the instant matter, the particularized need is tied to the complexity of the case and the severity of the possible punishment. Mr. Roggio requires an opportunity prior to the Friday before the empaneling of the jury to analyze the information that will be submitted through testimony at trial. This matter will involve witnesses from literally all

over the world and it will be impossible to investigate and summon potential witnesses half the world away at the eleventh hour. Disclosure of grand jury transcripts and witness statements well in advance of trial is absolutely necessary for Mr. Roggio to have a fair opportunity to prepare an adequate defense.

Third, if the government intends to introduce a hearsay statement under the residual exception, the government must provide the defendant with notice, sufficiently in advance of the trial, of its intent to use the statement, as well as the "particulars of it, including the name and address of the declarant." Fed. R. Evid. 807. Mr. Roggio contends that Rule 807 allows the defense "a fair opportunity to prepare to meet" the statement. Such opportunity can only be satisfied by production of the witness' statements, particularly if they are lengthy.

Finally, in an exercise of a court's inherent supervisory power over management of litigation and/or pursuant to Local Rules, courts have held that the government may be ordered to produce its witness statements earlier than specified in the *Jencks* Act, particularly where the statements are voluminous and early production poses no threat to the safety of witnesses. *United States v. Holmes,* 722 F.2d 37, 40 (4th Cir. 1983)(where there are many statements of one witness or the bulk of statements of several witnesses is large, government may be ordered to produce statements at earlier time to avoid lengthy trial delays); *United States v.*

*Acosta,* 357 F. Supp. 2d 1228 (D. Nev. 2005)(pretrial production of favorable evidence ordered); *United States v. Sudikoff*, 36 F. Supp. 2d 1196 (C.D. Calif. 1999)(same); *United States v. Snell,* 899 F. Supp. 17, 24 (D. Mass. 1995)(noting that nothing in *Jencks* Act preempts court's ability, consistent with court's obligations over case management, to order earlier disclosure than required by *Jencks* Act).

 Disclosure of information impeaching witnesses' credibility must be timed to enable effective preparation for trial. The prevailing practice within the Third Circuit encourages the government to comply with "delivering *Jencks* material to defense counsel sufficiently in advance of the conclusion of direct examination to obviate trial interruptions solely to permit defense counsel to study the disclosures." *United States v. Murphy*, 569 F.2d 771, 773 (3rd Cir. 1978); *United States v. Mote*, 2010 U.S. Dist. LEXIS 57178, 13-14 (M.D. Pa. June 10, 2010). "This is a salutary practice and we encourage it." *Murphy*, 569 F.2d at 773. "Since the purpose of such disclosures is to ensure the fundamental fairness of the trial, the court encourage[s] the government to provide [the] information at the earliest possible date." *Mote* at 14. With the assistance of early disclosure, "the trial will proceed in a more efficient manner if the defendant has this information." *Mote* at 14.

Mr. Roggio contends that the prosecution should be compelled to disclose *Jencks* material at least 45 days prior to jury selection because it will not only assist in achieving a fair trial but will also serve the public interest in expediting the fair resolution of criminal cases. *See ABA Standards for Criminal Justice*, § 11-2.2. In order to accomplish even a rudimentary investigation to be able to provide effective assistance of counsel, defense counsel and their investigators require *Jencks* material well before the jury is sworn. *See United States v. Holmes*, 722 F.2d at 41(providing materials one day before trial began did not "afford[] a reasonable opportunity to examine and digest" the documents).

**Conclusion**

For all of the above reasons, the Defendant, Ross Roggio, respectfully requests that this Honorable Court grant her Motion for Early Disclosure of *Jencks* Act Material and direct the government to disclose this information 45 days prior to jury selection.

Respectfully submitted,

Date: March 29, 2019  *s/Leo A. Latella*
**Leo A. Latella**
**Assistant Federal Public Defender**
**Attorney ID# PA 68942**

201 Lackawanna Avenue, Suite 317
Scranton, PA 18503
(570)343-6285
Fax: (570)343-6225

8

# CERTIFICATE OF SERVICE

I, Leo A. Latella, Assistant Federal Public Defender, do hereby certify that this document, the foregoing **Brief in Support of Motion for Early Disclosure of *Jencks* Act Material**, filed electronically through the ECF system will be sent to the registered Participants as identified on the Notice of Electronic Filing, including the following:

>Todd K. Hinkley, Esquire
>Assistant United States Attorney

and by placing the same in the United States mail, first class, postage prepaid, at Scranton, Pennsylvania, addressed to the following:

>Mr. Ross Roggio

Date: March 29, 2019         *s/Leo A. Latella*
**Leo A. Latella**
**Assistant Federal Public Defender**