UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 3:CR-18-0097 |
| | ) | |
| v. | ) | (Judge Mariani) |
| | ) | |
| ROSS ROGGIO | ) | (Filed Electronically) |

## GOVERNMENT'S RESPONSE TO DEFENSE MOTION FOR EARLY *JENCKS*

I.  **Procedural History**

On March 20, 2018, a federal grand jury sitting in Scranton, Pennsylvania returned a multicount indictment charging Ross Roggio with: conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371; violations of the Arms Export Control Act, 22 U.S.C. § 2278(b) and (c); violations of the International Emergency Powers Act, 50 U.S.C. §§ 1702 and 1705(c); smuggling goods from the United States, in violation of 18 U.S.C. §§ 554 and 2; wire fraud, in violation of 18 U.S.C. § 1343; and money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 2.

On March 29, 2019, Roggio filed two pre-trial motions in the above docket, to include: (1) Motion to Suppress Evidence Seized in Violation

of the United States Constitution (Doc. 46); and (2) Motion for Early Disclosure of *Jencks* Act Material. (Doc. 48).

This brief is filed in opposition to Roggio's Motion for Early Disclosure of *Jencks* Act Material.

II.     Factual Background

The instant prosecution is the result of a joint investigation being conducted by the Federal Bureau of Investigation (FBI), Immigration and Customs Enforcement (ICE), Homeland Security Investigators (HSI), and the U.S. Department of Commerce, Office of Export Enforcement. Ross Roggio, a United States citizen, is alleged to have exported firearms parts, firearms manufacturing tools, and defense services in support of the development of a firearms factory in the Kurdistan region of Iraq.

Roggio formerly resided at 143 Indian Spring Drive, Stroudsburg, Pennsylvania. He operated Roggio Consulting Company, LLC, with a business address of 116 Turkey Hill Court, Stroudsburg, Pennsylvania.[1] Roggio has a background in firearms sales and manufacturing, having been involved with two failed manufacturing enterprises in the United

---
[1] This is also the residence of Roggio's parents.

States. Roggio Arsenal, the first manufacturing venture, was located in Fayetteville, North Carolina and produced AR-15 style weapons, which are the semi-automatic civilian version of the M16 military rifle. Roggio Arsenal went out of business in 2010. In 2014, Roggio also attempted to manufacture weapons under the name Rebel Arms, a business that failed in the planning stages and was located in Stroudsburg, Pennsylvania.

This investigation was initiated when an individual from Drill Masters Eldorado Tools, Inc., located in Connecticut, contacted the FBI Public Access Line to report a suspicious shipment of gun manufacturing tools to Iraq. The report indicated that a customer by the name of Ross Roggio had purchased items from the company and had them delivered to Roggio's address in Pennsylvania before being transshipped to Iraq.

Roggio was subsequently telephonically interviewed on April 20, 2016, by a Special Agent of the FBI concerning the alleged shipment of controlled firearms manufacturing items to Iraq. Roggio acknowledged purchasing the items, but advised the agent that the items were shipped to and stored at either his own house, or his parent's house,

both of which are located in Stroudsburg, Pennsylvania. Roggio explained that he may have shipped cleaning kits for an AR-15 to Iraq approximately six weeks earlier.

Subsequent interviews with: (1) employees of Drill Master Eldorado Tool Inc.; (2) Ross Roggio's wife Kristy Merring-Roggio, and (3) the owner of Package Place, a commercial packing and shipping company located in Stroudsburg, Pennsylvania, showed that Roggio had directed the items purchased from Drill Mater Eldorado Tool Inc. to be transshipped from Stroudsburg, to Kurdistan, Iraq. Records checks with the proper licensing authorities determined that the items purchased by Roggio were both controlled for export to Iraq, and that Roggio had failed to obtain the necessary licenses to make such an export.

On November 17, 2016, based upon information from the investigation, agents obtained a court-authorized search warrant to the email service provider Yahoo! Inc. for the contents of two email accounts utilized by Roggio. Review of the fruits of that search revealed, among other things that in November of 2015, Roggio had emailed a document entitled "Weapons and Ammunition Feasibility Report," which

contained a detailed description of the requirements to build a weapons and ammunition plant in the Kurdish region of Iraq. One section of this report entitled "LEGAL FEASIBILITY" states, in part:

> The largest pool of skilled gun manufacturers will come from the USA. In order for these selected personnel to work on the project, they must be compliant to The International Traffic in Arms Regulations (ITAR). They will require the approval of the United States State Department. Failure to get proper approvals places the selected personnel in grave danger in incarceration and heavy fines.

The email search revealed additional evidence of criminal wrongdoing by Roggio, including the purchase of firearms parts for M4 type weapons which, the investigation has determined, were illegally exported to Iraq in support of Roggio's arms and ammunition plant.

Subsequent court ordered searches of electronic devices seized from Roggio as he returned to the United States from abroad revealed additional evidence of his crimes, including among other things: (1) communications with his Kurdistan customers; (2) detailed information concerning the arms and ammunition manufacturing plant project; (3) communications concerning possible fraud committed by Roggio in completing the arms factory; and, (4) financial records related to payment to Roggio for his work in Kurdistan.

III. Legal Argument

    1. <u>Motion to Disclose Grand Jury Transcripts</u>

Disclosure of grand jury material is covered by the Jencks Act, 18 U.S.C. § 3500. The Act states, in pertinent part:

> (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of a subpoena [sic], discovery, or inspection until said witness has testified on direct examination in the trial of the case.
>
> (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. . . .
>
>     \* \* \*
>
> (e) The term "statement," as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—
>
>     \* \* \*
>
> > (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

Federal Rule of Criminal Procedure 26.2 incorporates the Jencks Act into the federal discovery rules, and likewise limits discovery until after the witness has testified on direct examination. *See* Fed. R. Crim. P. 26.2. Likewise, Rules 16(a)(2) & (3) specifically exclude statements made by prospective government witnesses, including grand jury testimony, from pretrial discovery except as provided under the Jencks Act. *See* Fed. R. Crim. P. 16. Thus, as this Court has stated, "with respect to prior statements of witnesses that the Government intends to call at the time of trial, both the Jencks Act and the Federal Rules of Criminal Procedure make clear that the Government does not need to turn over the information requested by Defendant in this case until the witness whose statement is at issue has testified on direct examination at trial." *United States v. Delacruz*, No. 3:17-CR-00201, 2019 U.S. Dist. LEXIS 67018, at *32 (M.D. Pa. Apr. 19, 2019) (Mariani, J.). *See United States v. Merlino*, 349 F.3d 144, 155 (3d Cir. 2003) ("[Jencks] disclosures must be made *after* each witness testifies on direct examination") (emphasis added); *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978) ("[T]he Jencks Act flatly states that disclosure of prior statements by government witnesses may not be compelled until

said witness has testified on direct examination *in the trial of the case*.") (emphasis in original; internal quotation omitted).

Consistent with the practice of the U.S. Attorney's Office for the Middle District of Pennsylvania, all Jencks material will likely be turned over to the defendants in the week prior to the commencement of trial. However, "[i]t is not within the power of the District Courts to accelerate this timetable." *United States v. Moyer*, 726 F. Supp. 2d 498, 513 (M.D. Pa. 2010). *See United States v. Barry*, 2011 U.S. Dist. LEXIS 102354, *23 (M.D. Pa. Sept. 12, 2011) ("District courts do not have the discretion to compel the early disclosure of Jencks material."); *see also United States v. Salerno*, 2011 U.S. Dist. LEXIS 141655, *25 (M.D. Pa. Dec. 9, 2011) ("Although the Government may choose to provide the material earlier as a courtesy, . . . nothing in the Jencks Act, the Federal Rules of Criminal Procedure, or the precedent of the Third Circuit requires it.").

In particular, Roggio seeks the disclosure of the grand jury testimony of various witness, some of whom may testify for the government at trial and some of whom may not. Regarding witnesses who appeared before the grand jury but who will not be called upon to

testify, Roggio has no right of access to such testimony pursuant to the Jencks Act or the Federal Rules. *United States v. Schier*, 438 F.3d 1104, 1112 (11th Cir. 2006) (a defendant is not entitled to statements of non-testifying witnesses under the Jencks Act).[2]

More generally, a party seeking disclosure of grand jury material under Federal Rules of Criminal Procedure 6(e) must demonstrate a "particularized need" that overrides the secrecy afforded to the grand jury process. *See Salerno*, 2011 U.S. Dist. LEXIS 141655 at *29-30 (citing *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683 (1958)). The Supreme Court's view on grand jury secrecy is clear:

> [It is a] long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts. . . . This 'indispensable secrecy of grand jury proceedings' . . . must not be broken except where there is a compelling necessity. There are instances when that need will outweigh the countervailing policy. But they must be shown with particularity.
>
> *Proctor & Gamble Co.*, 356 U.S. at 681-82 (internal citations

omitted). A "vague allegation" of wrongdoing does not constitute a

---

[2] Of course, the United States is under an ongoing obligation to disclose evidence favorable to the accused pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). *See Murphy*, 569 F.2d at 774.

particularized need.  *United States v. Minerd*, 299 Fed. App'x 110, 111-12 (3d Cir. 2008).  *See also United States v. Donahue*, 2012 U.S. Dist. LEXIS 96613, *7 (M.D. Pa. Jul. 12, 2012) ("[A] conclusory allegation alone . . . does not demonstrate a particularized need for disclosure.") With respect to grand jury transcripts, while impeachment purposes may satisfy the particularized need requirement, the court cannot make that determination until trial, so early disclosure is unwarranted.  *See In re Grand Jury Matter*, 682 F.2d 61, 66 (3d Cir. 1982).

"As a matter of public policy, grand jury proceedings generally must remain secret except where there is a compelling necessity." *Proctor & Gamble Co.*, 356 U.S. at 682.  In order to obtain grand jury material under Federal Rule of Criminal Procedure 6(e), a party "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need to disclose is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co. of Ca. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979).

Roggio has failed to show any particularized need for advanced disclosure of any grand jury materials.  Absent such a showing, Roggio

is simply on a "fishing expedition," long rejected under federal law and practice.

Roggio's request is far below the requirements of providing need for the materials, as well as to some specification as to the materials sought. He states that he is making the instant request because: (1) the crimes charged in the indictment are unique, and not often encountered by the defense bar; (2) the government has provided voluminous discovery, to include many documents, communications (emails) of the defendant, and other evidence; and (3) the roster of potential witnesses both foreign and domestic is large. (Doc. 49, pp. 5 – 8).

These factors to some extent are present, however rather than bolstering Roggio's request for early *Jencks* the factors argue against the same. Regarding the crimes charged, though not often charged in this Circuit they are far from being rare. *See e.g., U.S. v. Amirnazmi*, 645 F.3d 564 (3d Cir. 2011). What is more, the legal theory upon which the government must prove guilt is not particularly hard to grasp. Generally speaking, the government must show: (1) that an item was purchased from a United States supplier, (2) was exported from the United States; (3) that the item exported was controlled for export; and

(4) that the exporter (defendant) did not have authority (i.e. licensure) to do so. *U.S. v. Reyes*, 270 F.3d 1158 (7th Cir. 2001).

As to the volume of the records disclosed to the defense, this factor works against the argument for early disclosure of *Jencks*. Nearly every potential witnesses' knowledge of, or activity related to, the crimes charged has been disclosed during discovery. As one example, a careful reading of the affidavit filed in support of the search of electronic devices seized from Roggio during the border search at JFK Airport on February 27, 2017, reveals information and statements gathered from several potential witnesses, including employees of Drill Master Eldorado Tool Inc.; Kristy Merring-Roggio; the owner of Package Place; Christina Sidiropoulou (Roggio's girlfriend and travel companion); and others. Other examples abound, such as investigative reports generated by case agents, email and other electronic communications discovered during the investigation, and related documents which have been disclosed to the defense during discovery. Given the volume and detail of the discovery provided by the government, there is little need for early *Jencks*, nor justification for the same. *See Delacruz*, 2019 U.S. Dist. LEXIS 67018 at *34 (denying

motion for grand jury materials where defendant "broadly asserted that he needs additional time to review" them).

The defendant has failed to show a particularized need for early disclosure of witness testimony before the grand jury, let alone the testimony of individuals who will not be called at trial. Moreover, discovery of grand jury testimony is appropriately controlled by the *Jencks* Act. His motion should be denied.

## IV. CONCLUSION

The defendant's motion for early disclosure of *Jencks* material should be denied on the basis of the aforestated reasons.

Respectfully submitted:

DAVID J. FREED
UNITED STATES ATTORNEY

s/ Todd K. Hinkley
Todd K. Hinkley
Assistant U.S. Attorney
235 North Washington Ave.
Scranton, PA 18503
570-348-2800
Attorney ID PA-68881