# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 3:CR-18-0097 |
| | : | |
| v. | : | (Judge Mariani) |
| | : | |
| ROSS ROGGIO | : | (Electronically filed) |

## ROGGIO'S REPLY BRIEF TO GOVERNMENT'S RESPONSE TO DEFENSE MOTION TO SUPPRESS EVIDENCE

### Procedural History

On March 29, 2019, Roggio's former counsel filed a Motion (with supporting brief) to Suppress Evidence Seized in Violation of the United States Constitution. (Documents 46, 47).

The undersigned was appointed as Counsel for Roggio on April 3, 2019.

On May 20, 2019, the Government filed its response to the aforesaid motion entitled Government's Response to Defense Motion to Suppress Evidence. (Document 56). This brief is a reply to the Government's Response.

## Argument

**I. Non-Routine Search and Seizure.**

The present case involved a "***non routine***" customs search and inspection which required, as justification, a "***reasonable suspicion"*** of criminal activity.

In <u>United States v. Montoya De Hernandez</u>, 473 U.S. 531 (1985), the Supreme Court found the continued detention of a traveler at the border on suspicion of smuggling drugs by way of her alimentary canal to be beyond the scope of a routine customs search and inspection. According to the Court, such detention can only be justified if, based upon the totality of circumstances, customs agent reasonably suspect that the traveler is smuggling contraband in her alimentary canal. Id. at 541.

In <u>United States v. Whitted</u>, 541 F.3d 480 (3rd Cir. 2008), the Third Circuit Court of Appeals was called upon to determine the lawfulness of a customs search of a passenger's cabin on a cruise ship which had come into a port within the United States. In reaching the decision, the Court noted that "Even at the border, however, an individual is entitled to be free from unreasonable search and seizure and his or her privacy interests must be balanced against the sovereign's interests",

and that "certain searches, classified as non-routine, require reasonable suspicion of wrongdoing to pass constitutional muster." Id at 485. (Citing <u>Montoya de Hernandez</u>, 473 U.S. 531). According to the Court of Appeals, the determination of whether a border search is routine or non-routine turns upon the degree to which it intrudes upon a traveler's privacy. Noting a "centuries-old principle of respect for the privacy of the home" the Court found the search to be non-routine and determined that it could only be justified by reasonable suspicion of illegal activity. Id. at 498.

Roggio, as a United States Citizen at the border, submits that the forensic search of his cell phone, laptops, and data storage devices greatly intrudes upon his personal privacy and can not be considered as routine. Just as the centuries old respect for the privacy of the home weighed the balance on the side of the passenger's cabin aboard a vessel, a new jurisprudential cornerstone has been set by the Supreme Court to steer the courses for the law's evolution in the digital age of communications. That cornerstone is <u>Riley v. California</u>, 573 U.S. 373 (2014).

In <u>Riley v. California,</u>, the Supreme Court ruled that the warrantless forensic examination of a cell phone could not be justified as a search incident to a lawful arrest. In striking the appropriate balance, the Court determined that the digital information on a cell phone does not further the government interests identified in

Chimel but instead implicates substantial privacy interests. Key to the Court's determination was its recognition of the unique characteristics and prevalence of today's cell phones in our society. According to the court, "cell phones differ in both a quantitative and qualitative sense from other objects that might be carried on an arrestee's person" and "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy" Id.

Several Courts of Appeals have recognized the unique characteristics and pervasiveness of today's cell phones and digital data technology, as first pointed out in Riley, and have applied those factors to the border search doctrine finding that forensic searches of these items are non-routine and require reasonable suspicion. United States v. Kolsuz, 890 F.3d 133 (4th Cir. 2018), United States v. Cotterman, 709 F.3d 952 (9th Cir. 2013).

As argued previously, no reasonable suspicion existed to justify the search and seizure at issue and the evidence should be suppressed.

## II. Good Faith Doctrine Should Not Apply.

Roggio respectfully submits that the good faith doctrine should not be found to excuse law enforcement's lack of reasonable suspicion.

In its brief the Government argues that even if reasonable suspicion did not exist to justify the seizure and search of Roggio's electronic devices, suppression would be unwarranted because the custom officials acted in good faith. According to the Government, at the time of the seizure and search, the Kolzuth case had not yet been decided thus the agents were acting in good faith reliance on existing precedent. (Doc 56, page 23).

Roggio submits that the good faith doctrine should not be available to law enforcement in this case because at the time of the seizure and search the Supreme Court had already decided the landmark case Riley v. California, 573 U.S. 373 (2014) and the Ninth Circuit had already issued the opinion in United States v. Cotterman, 709 F.3d 952 (9th Cir. 2013). But as importantly, law enforcement agents were *not* acting with subjective good faith in this case when they laid in wait for Roggio to arrive at the border and executed their plan to search and seize Roggio and his electronic devices. Indeed, the Government in its brief sets forth the true motive behind the seizure and search of Roggio's digital devices at JFK

International airport when it states "The review of Roggio's electronics at the border was conducted to uncover additional information about the ongoing, illegal export of weapons." (Doc 56, page 12). Thus, the seizure and search in this case was purposely conducted at the border in an attempt to further an ongoing criminal investigation and circumvent the sea change that had been brought about by <u>Riley v. California</u>.

      Accordingly the good faith doctrine should not save the government agents from acting without reasonable suspicion.

## Conclusion

Based upon the foregoing arguments, the Defendant, Ross Roggio, respectfully requests that this Honorable Court issue an Order Suppressing the Evidence.

                                                  Respectfully submitted,

Date: July 10, 2019                    s/Gino Bartolai
                                                **Gino Bartolai, Esquire**
                                                 **Attorney ID# PA 56642**

                                                 238 William Street
                                                 Pittston, Pennsylvania 18640
                                                 (570) 654-3572
                                                 E-mail: Bartolai@ptd.net
                                                 Attorney for Ross Roggio

# CERTIFICATE OF SERVICE

I, Gino Bartolai, Esquire, do hereby certify that I electronically served, via e-mail, a copy of the foregoing **Reply to Government's Response to Defendant's Motion to Suppress Evidence,** to the following

    Todd. K. Hinkley, Esquire
    Assistant United States Attorney

and by placing the same in the United States mail, first class, postage prepaid, at Scranton, Pennsylvania, addressed to the following:

    Ross Roggio


Date: July 10, 2019            s/Gino Bartolai
                                           **Gino Bartolai, Esquire**