UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 3:CR-18-0097 |
| | ) | |
| v. | ) | (Judge Mariani) |
| | ) | |
| ROSS ROGGIO | ) | (Filed Electronically) |

## GOVERNMENT'S SUPPLEMENTAL RESPONSE TO DEFENSE MOTION TO SUPPRESS EVIDENCE

I. Procedural History

On March 20, 2018, a federal grand jury sitting in Scranton, Pennsylvania returned a multicount indictment charging Ross Roggio with: conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371; violations of the Arms Export Control Act, 22 U.S.C. § 2278(b) and (c); violations of the International Emergency Powers Act, 50 U.S.C. §§ 1702 and 1705(c); smuggling goods from the United States, in violation of 18 U.S.C. §§ 554 and 2; wire fraud, in violation of 18 U.S.C. § 1343; and money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 2.

On March 29, 2019, Roggio filed two pre-trial motions in the above docket, to include: (1) Motion to Suppress Evidence Seized in Violation

of the United States Constitution (Doc. 46); and (2) Motion for Early Disclosure of *Jencks* Act Material. (Doc. 48).

The Government filed a Brief in Opposition to suppression on October 7, 2020. (Doc. 72). A suppression hearing is currently scheduled for May 27, 2021. (Doc. 84).

This supplemental brief in opposition to Roggio's Motion to Suppress Evidence is filed to bring to the Court's attention the recent First Circuit case *Alasaad v. Mayorkas*, 988 F.3d 8 (1st Cir. 2021).

As the procedural and factual background of this matter is addressed in the Government's brief in opposition, it will not be repeated here.

*Alasaad* involved a civil action seeking to enjoin policies implemented by U.S. Customs and Border Protection (CPB) and U.S. Immigration and Customs Enforcement ("ICE") governing searches of electronic devices at the border. *Alasaad,* 988 F.3d at 12. The plaintiffs claimed that the policies developed by these agencies violate the Fourth and First Amendments, both facially and as applied. *Id.*

Both the CPB and ICE policies bifurcate searches of electronic devices based on the level of scrutiny agents utilize to review

information contained within the electronics. *Alasaad* at 13 – 14. Under these guidelines "basic" searches may be conducted for any reason or no reason at all, while "more advanced" searches require reasonable suspicion of criminal activity or national security concerns. *Id*. In the case of CPB, "advanced searches" also require supervisory approval. *Id.* The plaintiffs argued that all electronic device searches at the border require a warrant, or in the alternative that such searches require reasonable suspicion that the device itself contain contraband. *Id*. at 16.

The plaintiffs relied on *Riley v. California*, 573 U.S. at 403, 134 S.Ct. 2473 to argue that border searches of electronic devices require a warrant. *Id.* at 17. In *Riley* the Supreme Court held that cellphones may not be searched without a warrant, though seized incident to arrest. *Id.* In rejecting the proposition that the *Riley* should control at the border, the *Alasaad* Court joined every other circuit that has faced this question. *Id*. In so finding the Court noted that the policy considerations behind border patrol are different to and broader than seizure incident to arrest. *Id.* Search of the person incident to arrest advances the protection of officers and prevention of the destruction of

evidence. *Id.* Search of cellphones does little to advance these core concerns. *Id.* Whereas "the border search is grounded in the government's "inherent authority to protect, and a paramount interest in protecting, its territorial integrity." *Id.* at 16. "Further, 'the expectation of privacy [is] less at the border than in the interior … [and] the Fourth Amendment balance between the interests of the Government and privacy right of the individual is also struck much more favorably to the Government at the border." *Id.* at 16 – 17.

The Court also rejected the plaintiff's argument that the nature of the information likely to be held in electronic devices implicates privacy concerns which alone should require a warrant. *Id.* at 18. "These privacy concerns, however significant or novel, are nevertheless tempered by the fact that the searches are taking place at the border, where the 'Government's interest in preventing the entry of unwanted. persons and effects is at its zenith.'" *Id.* (citation omitted).

The Court in *Alasaad* also rejected the notion that a border search of electronics should be limited to contraband contained in the devices. *Id.* at 19. "[T]he Supreme Court has repeatedly said that routine searches 'are reasonable simply by virtue of the fact that they occur at

the border.' This is so because the government's interest in preventing crime at international borders 'is at its zenith,' and it follows that a search for evidence of either contraband or a cross-border crime furthers the purposes of the border search exception to the warrant requirement." *Id.* (citations omitted). "Advanced border searches of electronic devices may be used to search for contraband, evidence of contraband, or for evidence of activity in violation of the laws enforces or administered by CPB or ICE." *Id.* at 21.

In finding that the policies formulated by CPB and ICE did not violate either the Fourth or First Amendment, the Court in *Alasaad* affirmed that the policies conformed to First Circuit precedent concerning warrantless border searches. *Id.* at 18. Indeed, under that precedent basic searches of electronics at the border may be conducted for any reason, and even "non-routine" searches need only reasonable suspicion. *Id.*

The search at bar, whether routine or "non-routine" was justified because reasonable suspicion existed that the electronic devices contained evidence of illegal export and other "activity in violation of the laws enforced or administered by CPB and ICE." *Id.* at 18 (citing

*U.S. v. Molina-Gómez*, 781 F.3d 13, 19 (holding that the search of a laptop and PlayStation, whether routine or non-routine, was justified because reasonable suspicion existed)).

Roggio's motion to suppress should be denied.

## II. Conclusion

The defendant's motion to suppress should be denied on the basis of the aforestated reasons.

Respectfully submitted:

BRUCE D. BRANDLER
ACTING UNITED STATES ATTORNEY

s/ Todd K. Hinkley
Todd K. Hinkley
Assistant U.S. Attorney
235 North Washington Ave.
Scranton, PA 18503
570-348-2800
Attorney ID PA-68881

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 3:CR-18-0097 |
| | ) | |
| v. | ) | (Judge Mariani) |
| | ) | |
| ROSS ROGGIO | ) | (Filed Electronically) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 4th day of May, 2021, he served a copy of:

## GOVERNMENT'S SUPPLEMENTAL RESPONSE TO DEFENSE MOTION TO SUPPRESS EVIDENCE

by filing the same with ECF, to which the below recipients subscribe:

ADDRESSEE(S):

Gino A. Bartolai, Jr.
bartolai@ptd.net


                                         /s/Todd K. Hinkley
                                         TODD K. HINKLEY
                                         Assistant United States Attorney