UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 3:CR-18-0097 |
| | ) | |
| v. | ) | (Judge Mariani) |
| | ) | |
| ROSS ROGGIO and | ) | |
| ROGGIO CONSULTING Co, LLC | ) | (Filed Electronically) |

### GOVERNMENT'S RESPONSE TO
### SECOND MOTION FOR EARLY *JENCKS*

I. <u>Background</u>

On March 20, 2018, a Grand Jury returned a multi-count indictment charging Ross Roggio and his company with conspiracy to violate the Arms Export Control Act, in violation of 18 U.S.C. § 371; violations of the Arms Export Control Act, 22 U.S.C. § 2278(b) and (c); violations of the International Emergency Powers Act, 50 U.S.C. §§ 1702 and 1705(c); smuggling goods from the United States, in violation of 18 U.S.C. §§ 554 and 2; wire fraud, in violation of 18 U.S.C. § 1343; and money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 2.  Doc. 1.  Among the motions Roggio filed on March 29, 2019, was a Motion for Early Disclosure of *Jencks* Act Material.  Doc. 48.  The motion was denied by the Court, which issued a memorandum explaining the denial.  Doc. 114.

In 2021, while preparing for the trial that was then scheduled for January 2022, Doc. 116, the Government learned of allegations that Roggio, a U.S. citizen, had tortured and conspired with Kurdish soldiers to torture one of his Estonian employees while Roggio was developing a firearms factory in the Kurdistan region of Iraq. The Government submitted Multilateral Legal Assistance Treaty (MLAT) requests that led to Estonian authorities interviewing potential witnesses in Estonia in the presence of U.S. law enforcement agents and prosecutors in December 2021 and April 2022. The Estonian authorities memorialized these interviews and, pursuant to the MLAT requests, provided their reports of the interviews in the Estonian language to the Government. These statements are *Jencks* material. The Government arranged for a contractor to translate the reports from Estonian into English.[1]

---

[1] The Government has produced to the defense documents in Estonian that were recently produced by Estonian authorities. The Government is in the process of translating some of those documents into English and will produce those translations when they become available. The Government has informed defense counsel that it is not having translated voluminous financial records, some of which Estonia provided *sua sponte*, which the Government does not intend to use at trial.

The Government advised counsel of the existence of these *Jencks* statements in Estonian and of the English translations and said it would produce the Estonian originals and the government's English translations to the defense when *Jencks* materials are customarily produced in this district. The Government also offered to provide the original Estonian reports to a certified translator service proffered by the defense should the defense desire independent translations, if the defense agreed to have that translator provide its translations to the Government. The Government said that when making its *Jencks* disclosures it would produce the original Estonian reports, the Government's translations of those reports, and the defense's translations of those reports for any witnesses the Government expected to call at trial. The Government said it would not disclose those materials for any witnesses it did not intend to call at trial, as there would be no *Jencks* disclosure obligation.[2]

---

[2] Of course, the United States is under an ongoing obligation to disclose evidence favorable to the accused pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). *See Murphy*, 569 F.2d at 774. The Government has reviewed the English translations of the Estonian interview reports, and no interview statement contains *Brady* material or would otherwise be required to be turned over to the defense prior to trial.

On February 15, 2022, a Grand Jury returned a Superseding Indictment adding Conspiracy to Commit Torture (Count One) and Torture (Count Two) to the original Indictment. Doc. 122. On June 3, 2022, in response to a joint motion to continue the trial date and specially set a new trial date in early 2023, the Court set a new trial date of February 6, 2023. Doc. 150. On August 9 and 10, 2022, the three current counsel entered appearances on behalf of the defendant. Docs. 151-153. They requested an opportunity to file pretrial motions related to the new charges contained in the Superseding Indictment. Doc. 154. The Court granted the extension, limiting motions related to the new charges in the Superseding Indictment. Doc. 157. On October 14, 2022, Roggio filed four motions, including for Early Disclosure of *Jencks* Act Materials. Doc. 168. The motion was accompanied by a brief in support. Doc. 169.

This brief is filed in opposition to Roggio's Second Motion for Early Disclosure of *Jencks* Act Material.

II.    Legal Argument

    A.    Motion for early disclosure of *Jencks*

As this is a second motion for early *Jencks*, the Government incorporates its earlier brief in opposition as if fully set forth herein. Doc. 55. This brief will address Roggio's renewed motion and brief in support of early *Jencks* statement disclosure.

Federal Rule of Criminal Procedure 26.2 incorporates the *Jencks* Act into the federal discovery rules, and likewise limits discovery until after the witness has testified on direct examination. Likewise, Rules 16(a)(2) & (3) specifically exclude statements made by prospective government witnesses, including grand jury testimony, from pretrial discovery except as provided under the *Jencks* Act. Thus, as this Court has stated, "with respect to prior statements of witnesses that the Government intends to call at the time of trial, both the *Jencks* Act and the Federal Rules of Criminal Procedure make clear that the Government does not need to turn over the information requested by Defendant in this case until the witness whose statement is at issue has testified on direct examination at trial." *United States v. Delacruz*, No. 3:17-CR-00201, 2019 U.S. Dist. LEXIS 67018, at *32 (M.D. Pa. Apr. 19,

2019) (Mariani, J.). *See United States v. Merlino*, 349 F.3d 144, 155 (3d Cir. 2003) (*Jencks* "disclosures must be made *after* each witness testifies on direct examination") (emphasis added); *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978) ("[T]he Jencks Act flatly states that disclosure of prior statements by government witnesses may not be compelled until said witness has testified on direct examination *in the trial of the case*.") (emphasis in original; internal quotation omitted).

    Consistent with the practice of the U.S. Attorney's Office for the Middle District of Pennsylvania, all *Jencks* material will likely be turned over to the defendants in the week prior to the commencement of trial. However, "[i]t is not within the power of the District Courts to accelerate this timetable." *United States v. Moyer*, 726 F. Supp. 2d 498, 513 (M.D. Pa. 2010). *See United States v. Barry*, 2011 U.S. Dist. LEXIS 102354, *23 (M.D. Pa. Sept. 12, 2011) ("District courts do not have the discretion to compel the early disclosure of *Jencks* material."); *see also United States v. Salerno*, 2011 U.S. Dist. LEXIS 141655, *25 (M.D. Pa. Dec. 9, 2011) ("Although the Government may choose to provide the material earlier as a courtesy, . . . nothing in the Jencks Act, the

Federal Rules of Criminal Procedure, or the precedent of the Third Circuit requires it.").

While Roggio seeks the early disclosure of all *Jencks* material, his motion focuses on the reports of witness interviews conducted by Estonian authorities. Some of these witnesses may testify for the government at trial and some may not. Regarding witnesses interviewed who will not be called upon to testify, Roggio has no right of access to such statements pursuant to the *Jencks* Act or the Federal Rules. *United States v. Schier*. 438 F.3d 1104, 1112 (11th Cir. 2006) (a defendant is not entitled to statements of non-testifying witnesses under the *Jencks* Act).

### B. Roggio conflates the Government's obligations under *Brady* with *Jencks* Disclosure.

Roggio has failed to show any particularized need for advanced disclosure of *Jencks* materials. Absent such a showing, Roggio is simply on a fishing expedition, long rejected under federal law and practice. In the opening paragraphs of Roggio's brief in support, he notes that "[d]isclosure of information impeaching a witness's credibility must be timed to enable effective *preparation* of trial." Br. in Support p. 1 (emphasis in original). He cites, among other cases to support his

7

claim, *United States v. Polisi*, 416 F.2d 573, 578 (2d Cir. 1969). In *Polisi* the Government withheld prior witness statements that could have been used by the defense to impeach. *Id.* at 578-79. That is to say, the Government breached its *Giglio* obligation. *Id.* Other cases cited by Roggio are likewise concerned with *Brady*, not *Jencks*. *See United States v. Baxter*, 492 F.2d 150, 173-74 (9th Cir. 1973); *United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976).

Roggio also misses the mark in his citation of *United States v. Opager*, 589 F.2d 799 (5th Cir. 1979). *Opager* dealt with a failure of the Government to turn over the address of a confidential informant, as required by the district court's order, in a drug trafficking prosecution whom the defense wished to interview. 589 F.2d at 804. The Fifth Circuit held that the government's failure to provide the address of the confidential informant in violation of the district court's order was not excusable. *Id.* at 805 ("But most of all, each of the government's arguments falls flat in light of the Court's Order requiring disclosure"). In discussing the Government's justifications for not disclosing the confidential informant's address, the *Opager* court noted that such arguments could have been made in response to the defendant's initial

8

request. *Id.* "The government's arguments might properly have been raised in opposing Opager's initial request for [the confidential informant's] address. Once the Court's order was entered, however, the government's objections to disclosure became moot except insofar as the government in an appropriate, timely way sought reconsideration. Otherwise, the government was bound to obey the Court's order." *Id.* Opager is about enforcing a district court's order, not *Jencks*.

### C. The Government has offered to enable timely independent translation of the Estonian interview reports.

As stated in Roggio's brief, the reports of interviews conducted by Estonian authorities are in Estonian and have been translated into English by the Government. Roggio wants to make independent translations of those reports and will have insufficient time to translate the documents prior to trial if the Government follows its customary practice of disclosing witness statements one week before trial. Br. in Support p. 3. What Roggio fails to mention is that the Government has communicated with counsel regarding this issue. As explained above, the Government has offered to work with the defense to permit independent translation – but not early disclosure – of the interview reports. If the defense proffers a certified translation service, the

9

Government will provide the original Estonian reports to the translation service, the translation service will provide its translations to the Government, and when the Government makes its *Jencks* disclosures, it will turn over those translations together with the Government's translations. This proposed accommodation affords the defense the opportunity to obtain independent translations, while allowing the Government to limit disclosure of non-*Brady* witness interviews not subject to *Jencks*.

    D.    <u>Roggio's stated reasons for early *Jencks* is insufficient to justify his request.</u>

Even if predicated on *Jencks*, rather than *Brady*, Roggio's request is far below the requirements of providing need for the materials, as well as to some specification as to the materials sought. He states that he is making the instant request because: (1) disclosure of information impeaching a witness's credibility must be disclosed in time to enable effective *preparation* of trial (emphasis in original) (i.e. *Brady*); (2) the crimes charged in the indictment are unique, and not often encountered by the defense bar; (3) the evidence produced by the Government as it relates to the torture charges is limited; (4) the roster of potential witnesses both foreign and domestic is large; and (5) the interview

10

reports produced pursuant to MLATs are in Estonian. Doc. 169, pp. 1-4. In short, Roggio states "without knowing the content of the testimony of [the torture related] witnesses, counsel cannot adequately determine who to call as witnesses to rebut that testimony." Br. in Support, p. 3.

Contrary to his assertions, Roggio does not require the content of the witnesses' statements to prepare his defense. The Superseding Indictment contains allegations with sufficient detail to put the defendant on notice as to the import of the witnesses' testimony likely to be elicited during trial regarding the torture charges. Paragraph 5 of the Superseding Indictment states:

> An employee ("the victim") raised concerns about the weapons project. To prevent the victim from interfering with the weapons project by exposing the existence of the weapons project to individuals and entities outside of Kurdistan, and by revealing to Kurdish officials that ROGGIO did not have the ability to produce the weapons and was diverting their money for his personal use, ROGGIO directed Kurdish shoulders to abduct the victim, detain the victim at a Kurdish military compound for approximately thirty-nine (39) days, and torture the victim during multiple interrogation sessions led by ROGGIO.

Doc. 122.

The Superseding Indictment goes on to describe, in great detail, (1) the motive for the torture, (2) the goal of the torture, and (3) the dates of the torture. *Id.* at ¶¶ 8-16. Further, the Superseding Indictment specifies that Roggio "brought other employees to the compound [where the torture occurred] on one or more occasions to watch while [he] directed Kurdish soldiers" to torture the victim. *Id.* at ¶ 17.

Roggio is not, as he states in his brief, "facing sheer trial by surprise." Br. in Support, p. 5. The language in the Superseding Indictment makes clear the evidence that the Government will produce at trial through the witnesses. There is no particularized need for *Jencks* material based on an alleged lack of disclosure of evidence by the Government.

Nor does Roggio's assertion that he needs to know the content of the testimony of witnesses prior to trial to determine which witnesses he should call make sense. Br. in Support, p. 3. Roggio states that he "has 100 different witnesses who potentially possess relevant knowledge in this case depending on what testimony the Government elicits at trial." Br. in Support, p. 3. The allegations in the torture

12

charges contained in the Superseding Indictment are plainly stated. The testimony likely to be elicited by the Government to prove these acts is not complicated. If Roggio has over 100 potential witnesses, there is nothing about a few *Jencks* statements which hinders his ability to mount a defense to the charges.

The defendant has failed to show a particularized need for early disclosure of statements of potential witnesses who will testify, let alone of individuals who will not be called at trial. Moreover, discovery of these reports is appropriately controlled by the *Jencks* Act. Roggio's motion should be denied.

## III. <u>Conclusion</u>

The defendant's motion for early disclosure of *Jencks* material should be denied on the basis of the aforestated reasons.

Dated: October 23, 2022                    Respectfully submitted,

GERARD M. KARAM
United States Attorney

By:  <u>*Todd K. Hinkley*</u>
Todd K. Hinkley
Assistant United States Attorney
235 North Washington Ave.
Scranton, PA 18503
Phone: 570-348-2800
Attorney ID PA-68881

KENNETH A. POLITE, JR.
Assistant Attorney General

By:  <u>*Patrick Jasperse*</u>
Patrick Jasperse
Trial Attorney
Criminal Division
U.S. Department of Justice
Human Rights and Special Prosecutions Section
1301 New York Avenue, NW
Washington, DC 20530
Phone: 202-616-8917

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No.  3:18-CR-0097 |
| v. | : | |
| | : | (Judge Mariani) |
| ROSS ROGGIO,  and | : | |
| ROGGIO CONSULTING Co, LLC | : | |
| Defendants. | : | (electronically filed) |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That on October 23, 2022, he served a copy of the attached **GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANT'S SECOND MOTION FOR EARLY *JENCKS***

by electronic means to:

Matthew T. Comerford
matt@comerfordparkins.com

Curt M. Parkins
curt@comerfordparkins.com

Jason A. Shrive
jshrive@shrivelaw.com

/s/ Todd K. Hinkley
Todd K. Hinkley
Assistant United States Attorney