UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No.   3:18-CR-0097 |
| v. : | |
| : | (Judge Mariani) |
| ROSS ROGGIO,  and : | |
| ROGGIO CONSULTING Co, LLC : | |
| Defendants. : | (electronically filed) |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS

I. Background

On March 20, 2018, a Grand Jury returned an Indictment charging Ross Roggio and his company, Roggio Consulting Company, LLC, with conspiracy to violate the Arms Export Control Act, in violation of 18 U.S.C. § 371; violations of the Arms Export Control Act, 22 U.S.C. § 2778 (b) and (c); violations of the International Emergency Powers Act, 50 U.S.C. §§ 1702 and 1705(c); smuggling goods from the United States, in violation of 18 U.S.C. §§ 554 and 2; wire fraud, in violation of 18 U.S.C. § 1343; and money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 2.   Doc. 1.   On February 15, 2022, a Grand Jury returned a Superseding Indictment adding to the original charges one count of conspiracy to commit torture, in violation of 18 U.S.C.

§ 2340A(c), and one count of torture, in violation of 18 U.S.C. §§ 2340A(a) and 2.  Doc. 122.

The Superseding Indictment charges a scheme in which Roggio agreed to manage a project to construct a weapons factory in the Kurdistan region of Iraq and produce weapons for Kurdish soldiers. Roggio is alleged to have exported M4 bolt gas rings, firing pin retainers, and rifling combo buttons to Iraq and provided defense services to Iraq from 2013 to 2017 without the required approvals of the United States Departments of State and Commerce.  The Superseding Indictment also alleges that Roggio directed Kurdish soldiers acting under color of law to detain and torture a Roggio employee who had raised concerns about the weapons project.  The Superseding Indictment alleges that the victim was unlawfully detained for 39 days in October and November 2015, during which time Roggio led interrogation sessions in which he and the Kurdish soldiers inflicted severe physical and mental pain and suffering on the victim, including (1) placing a plastic bag over the victim's head to suffocate him; (2) yanking the victim off the ground with a belt and suspending him in the

2

air so he lost consciousness; (3) tasering the victim with electrical shocks; (4) applying pressure to one of the victim's fingers with a large cutting tool similar to a bolt cutter while threatening to cut off the finger; (5) beating the victim with rubber hoses and fists; and (6) jumping violently on the victim's chest while wearing military boots. The Superseding Indictment further alleges that the torture of the victim was intended (1) to ensure that the victim did not interfere with the weapons project and (2) to demonstrate to other employees whom Roggio brought to the military compound upon occasion to watch the torture what could happen to them if they tried to interfere with the weapons project.

Roggio is scheduled to stand trial on February 6, 2023.   Doc. 150.

## II. The Recording

Two weeks after the victim was released from the military compound where he was tortured, Roggio summoned to his apartment one of the employees whom Roggio forced to watch the torture. Fearing for her safety, the witness covertly recorded the encounter on

3

her cell phone. At trial the witness will authenticate the recording, which is admissible under Federal Rule of Evidence 801(d)(2)(A).

The following is a draft transcript of a portion of that recording:

*Roggio: I've got to pay taxes, and I cannot hand receipts to the IRS for this shit. See, when – when I make a million dollars – say I make – like this year, $4 million came into my account, right?*

*Witness: Yeah.*

*Roggio: They know this. Then they – when I do my taxes, if I say I spent 4 million, well, then I owe no taxes right? They want to see the receipts of everything I bought. Now, the moment I turn those receipts over to them, that's evidence. Because, when you turn a receipt in to the IRS, you're turning it in to the U.S. federal government. And once they have those receipts, it's admissible for any type of crime. You understand?*

*Witness: Yeah, I understand.*

*Roggio: So, so by paying taxes as profits on all of it, it costs – it costs them more money, but it keeps my ass out of the fire. Because the moment: "OK, you turned in $4 million. What are you doing with gun drills, gun-making parts? This – this is all used for guns, and here's all the evidence that you gave us." Remember, busting me comes from the finances.*

*Witness: Yeah, I know that.*

*Roggio: Not from what I will say. They can – they can fucking arrest me and torture me 'til the day they die, I'll*

4

> *never talk. It's the finances. This is why [first name of victim] went for the finances.*
>
> *Witness: Are you sure that he went for the finances? That he wanted to somehow bust you?*
>
> *Roggio: No, he wanted – he wanted to blackmail me – for whatever, for whatever reason.*
>
> *Witness: Are you sure?*
>
> *Roggio: Yes.*
>
> *Witness: Because I know that the first thing you went in the compound with to see him – he – was $1 million and blah blah blah –*
>
> *Roggio: 100,000.*
>
> *Witness: Yeah, but is it true? Is it true? He wanted to do that? Are you sure?*
>
> *Roggio: Enough to beat him. Enough to torture him.*
>
> *Witness: OK, let's not talk about that.*

Later in the recorded conversation, Roggio said that he could not look the victim in the eye "because of what I did to him." Roggio also bragged that the victim "experienced the overwhelming ability of mine to crush somebody."

The recording is devastating evidence in which Roggio acknowledges committing the crimes with which he is now charged. He refers to having gun drills and gun-making parts, and then says he needs to hide what he is doing from U.S. authorities, implicitly acknowledging that he did not have approval to be exporting weapons parts from the United States. A moment later, he mentions the torture victim by name and explicitly admits to having tortured him. By corroborating in his own words what the victim and other witnesses will testify to at trial, Roggio negates any potential defense that these witnesses fabricated the torture allegations.

III. The Law

Federal law generally prohibits the interception of oral communications. 18 U.S.C. § 2511.[1] As Roggio points out, however, that statute contains the following exception:

---

[1] Because the recording at issue is so clearly admissible pursuant to 18 U.S.C. § 2511(2)(d), the Government assumes *arguendo* that Title III applies extraterritorially. Some circuits, however, have held that it does not. See *United States v. Peterson*, 812 F.2d 486, 492 (9th Cir. 1987); *United States v. Toscanino*, 500 F.2d 267, 279 (2d Cir. 1974).

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d). The impermissible purpose provision within § 2511(2)(d), on which Roggio's argument relies, is to be construed narrowly. *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013). Federal courts have long recognized that "it does not violate an individual's constitutional or statutory privacy interests to introduce at a criminal trial tape recordings of his private conversations if the other party to those conversations voluntarily consented to their recording." *United States v. Kelly*, 708 F.2d 121, 124 (3d Cir. 1983) (citations omitted).

IV. The Recording Should Be Admitted

Understandably desperate for the jury not to hear his admissions, Roggio asks this Court to suppress the recording on two grounds. First, Roggio argues that the recordings are voluminous, span hours,

7

and at times record conversations outside the presence of the witness who made the recordings. This is a non-issue. The witness made three separate recordings over a two-day period, but the Government intends to introduce at trial only relatively brief excerpts of one of those recordings, including the portions quoted above. The witness who made the recording was present during the portions of the conversation that the Government will introduce.

Second, Roggio claims that the witness made the recording with the purpose of blackmailing him, a crime that would render § 2511(2)(d)'s exception inapplicable. Roggio asserts: "In fact, the individual actually committed blackmail with the recordings, sending the recordings to Defendants and threatening to expose the recordings if they did not comply with that individual's commands." Br. in Support, p. 3. Roggio has provided no evidence in support of this claim, even though he carries the burden of proof.

Roggio promises that "if the Government meets its initial burden of admissibility, Defendants will present witnesses to establish this blackmail and the inadmissibility of the evidence." *Id.* The recording

is a statement of the defendant and will be authenticated by the witness who made the recording. If Roggio is suggesting that the Government has the burden of proving the recording was not made for a criminal purpose, he is wrong:

> To require the government or any other party to prove as a matter of foundation that an interception was made for no criminal, tortious or other injurious purpose would create an impossible burden of proving three negatives. Logic requires that the party against whom the evidence is offered, the defendant here, carry the ultimate burden of alleging and proving the specific criminal, tortious, or other injurious purpose for which the interception was made.

*United States v. Phillips*, 540 F.2d 319, 326 (8th Cir. 1976).[2]

Although the Third Circuit does not appear to have stated which party carries the burden of proof in the context of § 2511(2)(d), every circuit that has addressed this issue has said the defendant has the

---

[2] The Eighth Circuit found that the trial court erred in summarily denying the defendant's motion for an evidentiary hearing "before defense counsel was given any opportunity to make a statement or offer evidence in support of the motion." *Phillips*, 540 F.2d at 327. The appeals court ordered the district court to hold a hearing and said the defendant's conviction must be reversed if the defendant proved by a preponderance of the evidence that the recording was made for a criminal, tortious, or other injurious purpose.

9

burden of proving an unlawful purpose by a preponderance of the evidence. *See United States v. Zarnes*, 33 F.3d 1454, 1469 (7th Cir. 1994); *United States v. Cassiere*, 4 F.3d 1006, 1021 (1st Cir. 1993); *United States v. Dale*, 991 F.2d 819, 841 (D.C. Cir. 1993); *Traficant v. Commissioner of Internal Revenue Serv.*, 884 F.2d 258, 266 (6th Cir.1989); *United States v. Truglio*, 731 F.2d 1123, 1131-32 (4th Cir. 1984) (overruled on other grounds by *United States v. Burgos*, 94 F.3d 849 (4th Cir. 1996)); *Phillips*, 540 F.2d at 326.

More specifically, the First, Second, and the D.C. circuits have all held that, for a recording to be suppressed, the defendant must show either that the witness' (1) primary motivation or (2) a determinative factor in the witness' motivation for making the recording was to commit a criminal, tortious, or other injurious act. *See United States v. Tarantino*, 617 F. App'x 62, 65 (2d Cir. 2015); *Cassiere*, 4 F.3d at 1021; *Dale*, 991 F.2d at 841-42. All three circuits relied on the standard set forth in *United States v. Vest*, 639 F. Supp. 899, 904, 908, 911-12 (D. Mass. 1986), in which the court found that the defendant carried his burden, suppressed the recording for purposes of the

10

government's case in chief, but said the government could use the recording for impeachment if the defendant testified. All three of the circuit decisions upheld the admission of challenged recordings because *Vest*'s test had not been met.

Furthermore, the Second Circuit has held that a recording should be suppressed only if the person making the recording had a criminal or tortious purpose at the time the recording was made. "[I]f, at the moment he hits 'record,' the offender does not intend to use the recording for criminal or tortious purposes [against the other party], there is no violation*.*" *Jiau*, 734 F.3d at 152 (quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)). Even when the person making the recording later used it for blackmail, because there was no evidence that "blackmail was his 'primary motivation' or 'a determinative factor' at the time he made the recording," the Second Circuit upheld admission of the recording. *Tarantino*, 617 F. App'x 62 at 65. Even if the witness who surreptitiously recorded Roggio without his consent in 2015 later tried to blackmail Roggio with the recording, absent evidence that blackmail was the witness' primary motivation or

11

a determinative factor at the time the recording was made, the Government should be allowed to introduce this critical evidence.

The burden is not on the Government, but to be clear, blackmail was not the witness' motive for recording Roggio. The witness has stated that she recorded her interaction with Roggio because she had seen Roggio torture the victim, was intimidated by Roggio, feared for her life, and wanted to have proof of his threats. Roggio confirmed those fears during the recorded conversation. At one point, Roggio accused the witness of being weak and asked if she thought she could keep a secret from him. When the witness said she thought she could do so, Roggio asked: "How much you want to make a bet I can get that out of you? How about I call [the Kurdish soldiers who tortured the victim] and just strap you naked to that table?" Later, Roggio said the witness had reason to be afraid of him, warning her that if she ever betrayed him, "I'd come get you myself." Pursuant to § 2511(2)(d), courts have admitted recordings motivated by similar considerations. *See Cassiere*, 4 F.3d at 1021 (recording was held to be admissible because the purpose of recording was to prevent future distortions, not

12

blackmail); *Dale*, 991 F.2d at 841 (recording was held to be admissible because purpose of recording was to make an accurate record, not blackmail and extortion); *United States v. Kappler*, No. 8:14CR103, 2014 WL 6949614, at *2 (D. Neb. Dec. 8, 2014) (recording was admissible because purpose of recording was to make an accurate record); *United States v. McHugh*, 57 F. Supp. 3d 95, 100-01 (D. Mass. 2014) (recording was admissible because purposes of recording by witness who feared for his life were to protect himself and try to avoid prosecution).

Under any of the tests formulated above, Roggio has not carried his burden of proof. Roggio has provided no evidence that the witness who made the recording attempted to blackmail him, much less that the witness' primary purpose or determinative motivation at the time the recording was made was to blackmail him.

13

## V. Roggio Is Not Entitled to an Evidentiary Hearing

Based on the current record, Roggio is not entitled to an evidentiary hearing. In the Third Circuit:

> A motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress. *See* [*United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir.1996)] (stating a claim is "colorable" if it consists "of more than mere bald-faced allegations of misconduct"); [*United States v.*] *Brink*, [39 F.3d 419, 424 (3d Cir. 1994)] (requiring an evidentiary hearing when a defendant states a colorable claim that the government obtained evidence by violating his constitutional rights). At bottom, the purpose of an evidentiary hearing in the context of a suppression motion is to assist the court in ruling upon a defendant's specific allegations of unconstitutional conduct – its purpose is not to assist the moving party in making discoveries that, once learned, might justify the motion after the fact. To require an evidentiary hearing, a defendant's suppression motion therefore must set forth and identify for the court specific and concrete "issues of fact material to the resolution of the defendant's constitutional claim." *Voigt*, 89 F.3d at 1067.

*United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010).

Roggio's motion provides no support for his assertion that the witness who recorded him tried to blackmail him.[3] The two-sentence accusation in his motion does not come close to meeting the standard for when an evidentiary hearing is required. If the Court is inclined to grant the defendant's request for an evidentiary hearing or to reserve judgment on the motion, the Government respectfully requests that any hearing take place during trial, so that the witness need not travel from Estonia to the United States twice – first for an evidentiary hearing and then a second time for the trial.

## VI. Conclusion

The Government respectfully requests that the defendant's motion to suppress and request for an evidentiary hearing be denied.

---

[3] To date, Roggio has not provided any discovery to the Government pursuant to Federal Rule of Criminal Procedure 16(b).

Dated: October 23, 2022								Respectfully submitted,

											GERARD M. KARAM
											United States Attorney

									By:	*Todd K. Hinkley*
											Todd K. Hinkley
											Assistant United States Attorney
											235 North Washington Ave.
											Scranton, PA 18503
											Phone: 570-348-2800
											Attorney ID PA-68881

											KENNETH A. POLITE, JR.
											Assistant Attorney General

									By:	*Patrick Jasperse*
											Patrick Jasperse
											Trial Attorney
											Criminal Division
											U.S. Department of Justice
											Human Rights and Special
											Prosecutions Section
											1301 New York Avenue, NW
											Washington, DC 20530
											Phone: 202-616-8917

16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No.   3:18-CR-0097 |
| v. | : | |
| | : | (Judge Mariani) |
| ROSS ROGGIO,  and | : | |
| ROGGIO CONSULTING Co, LLC | : | |
| Defendants. | : | (electronically filed) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That on October 23, 2022, he served a copy of the attached **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS** by electronic means to:

Matthew T. Comerford
matt@comerfordparkins.com

Curt M. Parkins
curt@comerfordparkins.com

Jason A. Shrive
jshrive@shrivelaw.com

>                       */s/ Todd K. Hinkley*
>                       Todd K. Hinkley
>                       Assistant United States Attorney

17