UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No.   3:18-cr-0097 |
| v. | : | |
| | : | (Judge Mariani) |
| ROSS ROGGIO,  and | : | |
| ROGGIO CONSULTING Co, LLC | : | |
| Defendants. | : | (electronically filed) |

### GOVERNMENT'S OPPOSITION TO
### DEFENDANT'S MOTION TO DISMISS

When the Superseding Indictment was returned on February 15, 2022, defendant Ross Roggio became the fourth defendant charged with violating the federal torture statute since it was enacted in 1994.   One case is pending.[1]   One case was dismissed so that the defendant could be extradited to face related charges in Bosnia.[2]   The only defendant who has been convicted of violating the torture statute is Roy M. Belfast, Jr., also known as Chuckie Taylor, Jr., and Charles McArthur Emmanuel, who was found guilty at trial and sentenced to 97 years in prison.   Belfast made the same arguments Roggio is now raising – arguments that were rejected first by the district court and then by the

---

[1] *United States v. Correa*, Case No. 20-CR-148 (D. Colo. 2020).
[2] *United States v. Mujagic*, Case No. 12-CR-68 (N.D.N.Y. 2012).

Eleventh Circuit Court of Appeals. *See United States v. Belfast*, 611 F.3d 783 (11th Cir. 2010), *cert. denied*, 562 U.S. 1236 (2011). There is no reason for this Court to depart from the Eleventh Circuit's thorough, well-reasoned decision. The torture statute was a proper exercise of Congress' constitutional authority. Roggio's motion to dismiss Counts One and Two of the Superseding Indictment, Docs. 170-171, should be denied.

I. <u>The Torture Statute Is a Proper Exercise of Congress' Treaty-Implementing Authority</u>

    A. <u>Congress Enacted the Torture Statute to Implement U.S. Obligations Under the Convention Against Torture</u>

A facial challenge to a statute, such as Roggio's challenge to the torture statute, is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Roggio's challenge is without merit.

Congress passed the torture statute to implement the United States' obligations under the Convention Against Torture ("CAT"). *Belfast*, 611 F.3d at 801. The United Nations General Assembly

adopted the CAT in 1984. *Id.* President Reagan signed the CAT in 1988. *Id.* The Senate ratified the CAT in 1990. *Id.* at 802. Congress enacted the Torture Act, 18 U.S.C. §§ 2340-2340A, and it became effective in 1994. *Id.* The statute makes it a crime for anyone "outside the United States [to] commit[ ] or attempt[ ] to commit torture," 18 U.S.C. § 2340A(a), and establishes federal jurisdiction over such an offense where "the alleged offender is a national of the United States," or where "the alleged offender is present in the United States, irrespective of the nationality of the victim," 18 U.S.C. § 2340A(b).

The enactment of the torture statute was an appropriate exercise of Congress' treaty-implementing authority. Article I of the Constitution provides that "Congress shall have Power . . . To make all Laws which shall be necessary and proper for carrying into Execution the foregoing [enumerated] Powers, and all other Powers vested by this Constitution in the Government of the United States . . . ." U.S. const., art. I, § 8, cl. 18. Article II of the Constitution gives the president the "Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur." U.S.

const., art. II, § 2, cl. 2. The Constitution's Necessary and Proper Clause confers on Congress the "Power . . . [t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States." U.S. const., art. I, § 8, cl. 18. "Collectively, these clauses empower Congress to enact any law that is necessary and proper to effectuate a treaty made pursuant to Article II." *Belfast*, 611 F.3d at 804.

The Eleventh Circuit recognized in *Belfast* that the Supreme Court has repeatedly made clear that the expansive language of the Necessary and Proper Clause gives Congress broad authority to enact laws. *Id.* (citations omitted). Quoting *United States v. Comstock*, 560 U.S. 126, 133-34 (2010), *Belfast* noted that "the word 'necessary' does not mean 'absolutely necessary,'" but rather that Congress has the "broad power to enact laws that are 'convenient, or useful' or 'conducive' to the authority's 'beneficial exercise.' " *Id.* Continuing to quote the Supreme Court in *Comstock*, the Eleventh Circuit stated that "in determining whether the Necessary and Proper Clause grants Congress

4

the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." *Id.*

*Belfast* went on to state that

> Congressional power to pass those laws that are necessary and proper to effectuate the enumerated powers of the Constitution is nowhere broader and more important than in the realm of foreign relations.   Correspondingly, the judiciary's role in reviewing the acts of Congress in this area must be appropriately circumscribed. . . .   It follows generally that "[i]f [a] treaty is valid there can be no dispute about the validity of [a] statute [passed] under Article I, Section 8, Article I, Section 8, as a necessary and proper means to execute the powers of the Government."

*Id.* at 805 (quoting *Missouri v. Holland*, 252 U.S. 416, 432 (1920)).   *See also United States v. Bond*, 681 F.3d 149, 157 (3d Cir. 2012), *rev'd on other grounds*, 572 U.S. 844 (2014) ("In sum, *Holland* teaches that, when there is a valid treaty, Congress has authority to enact implementing legislation under the Necessary and Proper Clause, even if it might otherwise lack the ability to legislate in the domain in question.").

*Belfast* held that legislation implementing a treaty must bear a rational relationship to the treaty but need not be identical to the treaty. *Belfast*, 611 F.3d at 806 (citing *United States v. Ferreira*, 275 F.3d 1020, 1027-28 (11th Cir.2001); *United States v. Lue*, 134 F.3d 79, 84 (2d Cir. 1998)).[3] *Belfast* concluded:

> Applying the rational relationship test in this case, we are satisfied that the Torture Act is a valid exercise of congressional power under the Necessary and Proper Clause, because the Torture Act tracks the provisions of the CAT in all material respects. . . . Put simply, the CAT created a floor, not a ceiling, for its signatories in their efforts to combat torture.

*Id.*

### B. The Statute's Definition of Torture Is Not Unduly Broad

In arguing that the torture statute is unconstitutional, Roggio points to three differences between the CAT and the statute. The first is that the CAT's definition of torture requires that the torture be intentionally inflicted on another person "for such purposes" as

---

[3] The Third Circuit cited *Belfast* with approval in *Bond*, 681 F.3d at 165, the decision that was reversed on other grounds by the Supreme Court.

6

obtaining information, obtaining a confession, inflicting punishment, intimidation, or coercion, whereas the definition in the statute, 18 U.S.C. § 2340(1), does not require a motive. Br. in Support, pp. 2-3. Belfast raised the same argument and the Eleventh Circuit held that the difference was not material. *Belfast*, 611 F.3d at 807. The Eleventh Circuit found that both the CAT and § 2340(1) require the torture to be intentional. *Id.* The "for such purposes" language in the CAT served only to reinforce the intentionality requirement. *Id.* The court found that the statute fully embodied the considerations that the "for such purposes" language in the CAT was intended to reinforce and did not in any way eliminate or obfuscate the CAT's intent requirement. *Id.* Consequently, *Belfast* found that Congress did not exceed its power in implementing the CAT by "omitting a provision that merely 'reinforces' the core definition of torture as an intentional and malicious act." *Id.* at 808.

C. **The Statute's Requirement of Intent Is Consistent with the Treaty**

Like Belfast, Roggio next argues that the torture statute must be struck down because the CAT requires that pain and suffering actually result, whereas the statute also prohibits the intent to cause pain and suffering. Br. in Support, pp. 3-4. The Eleventh Circuit readily dispatched this claim because the CAT also called for the punishment of attempts to commit torture. *Belfast*, 611 F.3d at 808. The court found no difference between the CAT's prohibition of an attempt to commit torture and the statute's prohibition of the intent to commit torture. *Id.*

D. **The Statute's Color of Law Requirement Is Consistent with the Treaty**

The third difference between the CAT and the torture statute to which Roggio points is that "the CAT only applies to actions actually committed by public officials; the Act applies to anyone acting under color of law." Br. in Support, p. 3. Roggio's paraphrasing of the CAT, however, does not do full justice to its language. The CAT's definition of torture includes severe pain or suffering intentionally inflicted "by or

8

at the instigation of or with the consent or acquiescence of a public official *or other person acting in an official capacity*." CAT, art. 1(1) (emphasis added).[4] In rejecting Belfast's identical claim, the Eleventh Circuit noted that the Senate Executive Committee that evaluated the CAT explained that there was no distinction between the meaning of acting "under the color of law" and acting in "an official capacity." *Belfast*, 611 F.3d at 808. To be sure, Roggio was not a Kurdish official. However, the Kurdish soldiers were acting under color of law and in an official capacity when they carried out the torture that Roggio directed. By conspiring with, acting in concert with, and aiding and abetting those Kurdish soldiers, Roggio, too, acted under color of law and in an official capacity.

## II. The Torture Statute Is a Proper Exercise of Congress' Authority to Define and Punish Offenses Against the Law of Nations

Even if the United States had not entered into the CAT, the torture statute would have been a valid exercise of Congress' constitutional authority. The "Offences Clause" gives Congress the

---

[4] *See* https://www.ohchr.org/sites/default/files/cat.pdf.

power "[t]o define and punish . . . Offences against the Law of Nations." U.S. const., art. I, § 8, cl. 10.

In *United States v. Arjona*, 120 U.S. 479, 488 (1887), the Supreme Court upheld a law criminalizing the counterfeiting of foreign government securities under the Offences Clause, stating that "[i]f the thing made punishable is one which the United States are required by their international obligations to use due diligence to prevent, it is an offense against the law of nations." A century later, the Supreme Court reaffirmed that it is through the Offences Clause that the Constitution attempts to further the "vital national interest" of the United States "in complying with international law." *Boos v. Barry*, 485 U.S. 312, 323 (1988).

Torture is prohibited by numerous treaties and other instruments, such as the Geneva Conventions, that are widely accepted by the international community. Because torture is an offense under international law, pursuant to the Offences Clause, Congress was within its authority to make torture a violation of federal law.

III. <u>The Torture Statute Is a Permissible Regulation of the Extraterritorial Conduct of U.S. Citizens</u>

Finally, Roggio also contends, citing no case law, that the torture statute is unconstitutional because "[t]he Constitution does not authorize Congress to regulate conduct by American citizens while outside of the United States which has no impact or relation to the United States." Br. in Support, p. 4. Once again, he is wrong. Congress has the power to regulate the extraterritorial conduct of U.S. citizens. *See Foley Bros. v. Filardo*, 336 U.S. 281, 284 (1949); *Blackmer v. United States*, 284 U.S. 421, 433-38 (1932); *United States v. Plummer*, 221 F.3d 1298, 1304 (11th Cir. 2000); *Chua Han Mow v. United States*, 730 F.2d 1308, 1311 (9th Cir. 1984); *United States v. Baker*, 609 F.2d 134, 136 (5th Cir. 1980). Title 18 of the United States Code contains numerous laws that apply to the conduct of U.S. citizens abroad, including but not limited to sections 1091, 1119, 1651, 2251(c), 2260(c), 2332a(a)(1), 2332b, 2423(c), 2423(d), 2441(a), 2442, and 3261(a).

As the Eleventh Circuit noted in *Belfast*, "limiting the prohibitions of the Torture Act to conduct occurring in the United States would dramatically, if not entirely, reduce their efficacy." 611 F.3d at 811. Congress has the latitude to criminalize certain conduct by U.S. citizens who are abroad. This Court should affirm Congress' authority to prohibit U.S. citizens from committing torture while in a foreign country and allow the prosecution of Roggio to go forward.

## IV. Conclusion

The Government respectfully requests that the defendant's motion to dismiss be denied.

Dated: October 23, 2022                    Respectfully submitted,

                                           GERARD M. KARAM
                                           United States Attorney


                                       By: *Todd K. Hinkley*
                                           Todd K. Hinkley
                                           Assistant United States Attorney
                                           235 North Washington Ave.
                                           Scranton, PA 18503
                                           Phone: 570-348-2800
                                           Attorney ID PA-68881

                                           KENNETH A. POLITE, JR.
                                           Assistant Attorney General

                                       By: *Patrick Jasperse*
                                           Patrick Jasperse
                                           Trial Attorney
                                           Criminal Division
                                           U.S. Department of Justice
                                           Human Rights and Special
                                           Prosecutions Section
                                           1301 New York Avenue, NW
                                           Washington, DC 20530
                                           Phone: 202-616-8917

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No.   3:18-CR-0097 |
| v. | : | |
| | : | (Judge Mariani) |
| ROSS ROGGIO,  and | : | |
| ROGGIO CONSULTING Co, LLC | : | |
| Defendants. | : | (electronically filed) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That on October 23, 2022, he served a copy of the attached **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** by electronic means to:

Matthew T. Comerford
matt@comerfordparkins.com

Curt M. Parkins
curt@comerfordparkins.com

Jason A. Shrive
jshrive@shrivelaw.com

>*/s/ Todd K. Hinkley*
>Todd K. Hinkley
>Assistant United States Attorney

14