UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No.  3:18-cr-0097 |
| v. : | |
| : | (Judge Mariani) |
| ROSS ROGGIO,  and : | |
| ROGGIO CONSULTING Co, LLC : | |
| Defendants. : | (electronically filed) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR A BILL OF PARTICULARS**

I. **Background**

A Superseding Indictment returned on February 15, 2022, added one count of conspiracy to commit torture, in violation of 18 U.S.C. § 2340A(c), and one count of torture, in violation of 18 U.S.C. §§ 2340A(a) and 2, against defendant Ross Roggio to the previous charges against him and his company.  Doc. 122.  The Superseding Indictment is 37 pages, ten of which set forth the torture-related charges in Counts One and Two.  The allegations in those counts provide detailed descriptions of (1) the victim of the torture, (2) the motive for the torture, (3) the goal of the torture, (4) the dates of the torture, (5) the types of torture that Roggio inflicted, and (6) that Roggio tried to intimidate others by forcing them to watch some of the torture.

In his motion for a Bill of Particulars and Brief in Support, Docs. 166-167, Roggio asks the Court to order the Government to file a Bill of Particulars that describes "with particularity the precise location in and at which Defendant allegedly committed torture" and states "the identities of any alleged co-conspirators." Br. in Support, pp. 3, 5. In response, the Government is concurrently filing a voluntary Bill of Particulars. As to Roggio's first request, the Bill of Particulars states that the Kurdish military compound at which the Superseding Indictment alleges the torture took place was located on the outskirts of Sulaymaniyah, in the Kurdistan region of Iraq. As to Roggio's second request, the Bill of Particulars states that the "Defendant conspired with Kurdish soldiers acting under color of law to torture the victim, as charged in Count One of the Superseding Indictment, and acted jointly with and aided and abetted Kurdish soldiers acting under color of law to torture the victim, as alleged in Count Two of the Superseding Indictment."

Further particularity is not required. Roggio's motion should be denied.

## II. The Law

As a general rule, the function of a bill of particulars is to inform the defendant of the nature of the charges against him with sufficient precision to enable him to prepare his defense and to avoid or minimize the danger of surprise at trial. *Wong Tai v. United States*, 273 U.S. 77 (1927); *United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1971). Thus, a prerequisite to finding that a bill of particulars is warranted in this case is a determination that the Superseding Indictment and the voluntary Bill of Particulars are insufficient to inform the defendant of the nature of the charges. "[A] bill of particulars should be granted whenever an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989).

A bill of particulars is not an investigative tool for the defense to obtain wholesale discovery of the Government's evidence prior to trial. *Addonizio*, 451 F.2d at 64. For example, a defendant may not use a motion for a bill of particulars to compel the disclosure of the

3

government's witness list. *Id.* "A bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation," but rather "is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (citations omitted) (emphasis in original).

### III. Further Particularity Is Not Required Regarding the Location of the Torture

One of the elements the Government must meet is that the torture took place outside of the United States. 18 U.S.C. § 2340A(a). The Superseding Indictment thus properly alleged that the conspiracy to torture and the torture occurred "outside of the United States," specifically "in the Kurdistan region of Iraq." Roggio is mistaken when he asserts that, absent a bill of particulars, the Superseding Indictment is insufficient. Br. in Support, p. 4. This Court denied a motion for a bill of particulars that sought, among other things, "the geographical areas of the alleged conspiracies," finding sufficient the indictment's

allegation that the conspiracies took place in the Middle District of Pennsylvania. *See United States v. Curtis*, No. 3:17-CR-00007, 2020 WL 3898983, at *7 (M.D. Pa. July 10, 2020) (Mariani, J.). *See also United States v. Jones*, 447 F. App'x 319, 323 (3d Cir. 2011) (motion for bill of particulars specifying locations and times of drug sales was properly denied because indictment contained numerous factual allegations about the alleged conspiracy and the defendant's involvement). The details in the Superseding Indictment meet Federal Rule of Criminal Procedure 7(c)(1)'s requirement that the indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged."

In addition, the Superseding Indictment alleged that the unlawful detention and torture of the victim took place at a "Kurdish military compound." Doc. 122, ¶¶ 5, 10, 12, 13, 14, 15, 16, 17, 19. The voluntary Bill of Particulars still further specified that the Kurdish military compound was located on the outskirts of Sulaymaniyah. Further detail is not required for the defendant to prepare his defense.

Roggio's motion says without explanation that "there are numerous places in the Kurdistan region in which the United States has jurisdiction" and contends that "without knowing the location, Defendant cannot effectively prepare to challenge the 'outside of the United States' element of the offense." Br. in Support, pp. 4-5. The torture statute's jurisdiction is limited to torture or attempted torture that occurred "outside of the United States." 18 U.S.C. § 2340A(a). The "'United States' means the several States of the United States, the District of Columbia, and the commonwealths, territories, and possessions of the United States." 18 U.S.C. § 2340(3).

Roggio will quickly hit a dead end if he plans to argue that he cannot have violated 18 U.S.C. § 2340A because conduct that took place in Iraq was somehow not "outside of the United States." First, the alleged conduct took place at a Kurdish military compound, not an American military base. Second, even if the conduct had taken place on a U.S. military base in the Kurdistan region of Iraq, it still would have taken place outside of the United States. The statute's definition of the United States clearly applies to geographic places, namely the 50

6

states, the District of Columbia, commonwealths such as Puerto Rico, and territories and possessions such as American Samoa and Guam.

The torture statute's definition of the "United States" should not be conflated with Title 18's definition of the "special maritime and territorial jurisdiction of the United States," which in some instances covers U.S. diplomatic and military facilities located in foreign countries. *See* 18 U.S.C. § 7(9). If the torture statute was meant to govern acts that took place outside of the United States' special maritime and territorial jurisdiction, the statute would have said so, as many other statutes have. *See, e.g.,* 18 U.S.C. §§ 81, 113, 661, 662, 1111, 1112, 1113, 1363. Congress is assumed to act intentionally and purposely when it includes particular language in one section of a statute but omits it in another. *See Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 777 (2020); *Aristy-Rosa v. Att'y Gen. United States*, 994 F.3d 112, 115–16 (3d Cir. 2021). Instead, by referencing the need for the torture to have taken place "outside of the United States," the language of the torture statute makes clear that it applies

7

to acts outside of the 50 states, the District of Columbia, and the commonwealths, territories, and possessions of the United States.

## IV. Further Particularity Is Not Required Regarding the Identity of Roggio's Co-Conspirators

Roggio also protests that without knowing the identity of his co-conspirators, he "cannot begin to comprehend how he is alleged to have acted under color of law and cannot prepare a defense." Br. in Support, p. 6. The voluntary Bill of Particulars clarifies that Roggio conspired with Kurdish soldiers who were acting under color of law.

The evidence will show that the Kurdish soldiers were state actors who were acting under color of law when they tortured the victim. The soldiers wore military uniforms, were armed with military weapons, and were part of a military force that also conducted military operations. The torture took place on a securely guarded Kurdish military compound on which soldiers lived and worked. Structurally, the Kurdish soldiers were part of the government apparatus in Kurdistan, and, practically, the Kurdish soldiers exercised authority in Kurdistan. When, at Roggio's direction, the soldiers went to the

8

victim's door, blindfolded him, and took him to the military compound, they were clothed with state authority. Roggio conspired with the Kurdish soldiers to torture the victim (Count One) and he acted together with and aided and abetted the Kurdish soldiers in torturing the victim (Count Two).

Courts interpreting nearly identical "color of law" requirements in the context of 42 U.S.C. § 1983 and 18 U.S.C. § 242 have found that private actors can be acting under color of law. Roggio acted under color of law by working in concert with the Kurdish soldiers, who were state actors, much like an off-duty police officer in the § 1983 context can be found to be acting under color of law. The Third Circuit has said that "under color of law" can mean "under pretense of law." *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)). "'If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity.' In this same vein, off-duty police officers who purport to exercise official authority

9

will generally be found to have acted under color of state law." *Id.* (quoting *Griffin v. Maryland*, 378 U.S. 130, 135 (1964)). *See also Chapman v. Higbee Co.*, 256 F.3d 416, 426, 428 (6th Cir. 2001) (recognizing that "[j]ust as an off-duty police officer who acts with actual authority is deemed to be a state actor, a private party who purports to exercise official authority can be a state actor").

To establish that Roggio was acting under color of law, the Government will need to prove either that (1) Roggio exercised powers that are traditionally the exclusive prerogative of the state; (2) Roggio acted with the help of or in concert with state officials; or (3) that the state had so far insinuated itself into a position of interdependence with Roggio that it must be recognized as a joint participant in the challenged activity. *See Kach v. Hose*, 589 F.3d 626, 646 (3d. Cir. 2009) (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d. Cir. 1995)). The evidence will establish that all three scenarios apply. First, the power to detain and punish are traditionally prerogatives of the state. Second, Roggio acted with the help of and in concert with the Kurdish soldiers. Third, Roggio's project to manufacture weapons

10

for the Kurds so intertwined him with the Kurdish soldiers who wanted the project to succeed that Roggio and the Kurdish soldiers had become joint participants.

If Roggio is asking for the names of the Kurdish soldiers, the Government does not have them. The soldiers did not identify themselves and the victim did not ask. Courts have long held that the identity of co-conspirators is unnecessary to proving a defendant guilty of conspiracy. *See Rogers v. United States*, 340 U.S. 367, 375 (1951) ("Of course, at least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown."); *United States v. Lopez*, 6 F.3d 1281, 1288 (7th Cir. 1993) (citation omitted) ("The defendant's co-conspirator does not have to be named in the indictment."); *United States v. Camara*, 908 F.3d 41, 46 (4th Cir. 2018) (citations and quotations omitted) ("The existence of the conspiracy, rather than the particular identity of the conspirators, is the essential element of the crime."); *United States v. Fuhai Li*, No. 3:16-CR-00194, 2018 WL 1299724, at \*6, ftnt. 7 (M.D. Pa.

11

Mar. 13, 2018) (collecting cases in which courts denied motions for a bill of particulars seeking the specific identities of co-conspirators).

In sum, Roggio does not need to know the specific identities of the soldiers to understand the charges or to prepare his defense.

## V. Conclusion

The Government respectfully requests that the defendant's motion for a bill of particulars be denied.

Dated: October 24, 2022                    Respectfully submitted,

                                                         GERARD M. KARAM
                                                        United States Attorney

                                      By: *Todd K. Hinkley*
                                          Todd K. Hinkley
                                          Assistant United States Attorney
                                          235 North Washington Ave.
                                          Scranton, PA 18503
                                          Phone: 570-348-2800
                                          Attorney ID PA-68881

                                          KENNETH A. POLITE, JR.
                                          Assistant Attorney General

                                      By: *Patrick Jasperse*
                                          Patrick Jasperse
                                          Trial Attorney
                                          Criminal Division
                                          U.S. Department of Justice
                                          Human Rights and Special
                                          Prosecutions Section
                                          1301 New York Avenue, NW
                                          Washington, DC 20530
                                          Phone: 202-616-8917

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No.   3:18-CR-0097 |
| v. | : | |
| | : | (Judge Mariani) |
| ROSS ROGGIO,  and | : | |
| ROGGIO CONSULTING Co, LLC | : | |
| Defendants. | : | (electronically filed) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That on October 24, 2022, he served a copy of the attached **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR A BILL OF PARTICULARS** by electronic means to:

Matthew T. Comerford
matt@comerfordparkins.com

Curt M. Parkins
curt@comerfordparkins.com

Jason A. Shrive
jshrive@shrivelaw.com

　　　　　　　　　　　　　　　　　*/s/ Todd K. Hinkley*
　　　　　　　　　　　　　　　　　Todd K. Hinkley
　　　　　　　　　　　　　　　　　Assistant United States Attorney