THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :
                                : 3:18-cr-0097
        v.                      : (Judge Mariani)
                                :
ROSS ROGGIO,                    :
ROGGIO CONSULTING, LLC,         :
                                :
        Defendants.             :

## MEMORANDUM OPINION

Defendant's Motion to Suppress (Doc. 172) is pending before the Court. In his supporting brief, Defendant requests an evidentiary hearing to determine if the recordings turned over by the Government in discovery are unlawful wiretaps and must be suppressed pursuant to 18 U.S.C. § 2511. (Doc. 173.) Defendant asserts that the recordings "were secretly and surreptitiously taken by an individual without Defendant's consent [and] the Government intends to admit this at trial as a purported admission by Defendant that he committed torture." (*Id.* at 1.) The Government disagrees with Defendant that the recordings at issue must be suppressed. (Doc. 175.) In support of its position, the Government provides an excerpt of the recording, contends that Defendant acknowledges in the recording that he committed the crimes charged, and states that the recording is admissible under Federal Rule of Evidence 801(d)(2)(A). (*Id.* at 4-6.)

The parties agree that 18 U.S.C. § 2511 generally prohibits the interception of oral communications. (Doc. 173 at 2; Doc. 175 at 6.) What is at issue is whether the exception

to the general rule set out in 18 U.S.C. § 2511(2)(d) applies to the recordings at issue here. This subsection provides:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C.A. § 2511(2)(d). The Government cannot use evidence received in violation of § 2511 in a criminal trial against an accused. See *United States v. Antoon*, 933 F.2d 200, 203 (3d Cir. 1991) (citing 18 U.S.C. § 2511(1)(d)).

The Government asserts that the witness who covertly recorded a conversation with Defendant Roggio will authenticate the recording which is admissible pursuant to Federal Rule of Evidence 801(d)(2)(A). (Doc. 175 at 3-4.) Rule 801(d)(2)(A) provides that a statement is not hearsay if the "statement is offered against an opposing party" and "was made by the party in an individual or representative capacity."

Defendant states that "[t]he burden of proof when a Defendant seeks suppression of § 2511 communication is upon the Government to establish admissibility." (Doc. 173 at 2 (citing *United States v. Ligambi*, 891 F. Supp. 2d 709, 716 (E.D. Pa. 2012)).) The Government responds

> [i]f Roggio is suggesting that the Government has the burden of proving the recording was not made for a criminal purpose, he is wrong:
>
> > To require the government or any other party to prove as a matter of foundation that an interception was made for no

2

> criminal, tortious or other injurious purpose would create an impossible burden of proving three negatives. Logic requires that the party against whom the evidence is offered, the defendant here, carry the ultimate burden of alleging and proving the specific criminal, tortious, or other injurious purpose for which the interception was made.
>
> *United States v. Phillips*, 540 F.2d 319, 326 (8th Cir. 1976).
>
> Although the Third Circuit does not appear to have stated which party carries the burden of proof in the context of § 2511(2)(d), every circuit that has addressed this issue has said the defendant has the burden of proving an unlawful purpose by a preponderance of the evidence. *See United States v. Zarnes*, 33 F.3d 1454, 1469 (7th Cir. 1994); *United States v. Cassiere*, 4 F.3d 1006, 1021 (1st Cir. 1993); *United States v. Dale*, 991 F.2d 819, 841 (D.C. Cir. 1993); *Traficant v. Commissioner of Internal Revenue Serv.*, 884 F.2d 258, 266 (6th Cir.1989); *United States v. Truglio*, 731 F.2d 1123, 1131-32 (4th Cir. 1984) (overruled on other grounds by *United States v. Burgos*, 94 F.3d 849 (4th Cir. 1996)); *Phillips*, 540 F.2d at 326.
>
> More specifically, the First, Second, and the D.C. circuits have all held that, for a recording to be suppressed, the defendant must show either that the witness' (1) primary motivation or (2) a determinative factor in the witness' motivation for making the recording was to commit a criminal, tortious, or other injurious act. *See United States v. Tarantino*, 617 F. App'x 62, 65 (2d Cir. 2015); *Cassiere*, 4 F.3d at 1021; *Dale*, 991 F.2d at 841-42. All three circuits relied on the standard set forth in *United States v. Vest*, 639 F. Supp. 899, 904, 908, 911-12 (D. Mass. 1986), in which the court found that the defendant carried his burden, suppressed the recording for purposes of the government's case in chief, but said the government could use the recording for impeachment if the defendant testified. All three of the circuit decisions upheld the admission of challenged recordings because Vest's test had not been met.

(Doc. 175 at 9-10.)

The Court agrees with the Government that the weight of authority supports finding that the defendant has the burden of proving an unlawful purpose by a preponderance of the evidence in the context of § 2511(2)(d). Authority cited by Plaintiff does not indicate

3

otherwise. *United States v. Ligambi*, 891 F. Supp. 2d 709 (E.D. Pa. 2012), the case cited by Defendant in support of his statement that "[t]he burden of proof when a Defendant seeks suppression of § 2511 communication is upon the Government to establish admissibility" (Doc. 173 at ) does not address admissibility pursuant to § 2511(2)(d). Rather, *Ligambi* considered whether the government had met its burden of showing that an informant consented to the interception and recording of a conversation and whether the government met its burden of authenticating and identifying the voices on the recordings. 891 F. Supp. 2d at 717-18.

Turning now to the parties' substantive arguments, Defendant asserts two reasons for the recordings to be suppressed.

> First, the recordings in this matter are voluminous and span hours. They include not only conversations of the person who recorded the audio, but private conversations between others. They contain conversations between individuals, none of whom consented to the communication. The statute prohibits any intercept that does not have at least one party consent. Therefore, the recordings must be suppressed.
>
> Second, the exception for one party consent does not apply because these communications were intercepted for the purpose of committing criminal and tortious acts. The individual making the recordings made them for the purposes of committing blackmail. In fact, the individual actually committed blackmail with the recordings, sending the recordings to Defendants and threatening to expose the recordings if they did not comply with that individual's commands.

(Doc. 175 at 2-3.)

In response to Defendant's assertion that the recordings are not admissible pursuant to 18 U.S.C. § 2511(d)(2), the Government first states that it intends to introduce at trial only

4

relatively brief excerpts of one recording and the witness who made the recording was present during the portions of the conversation the Government will introduce. (Doc. 175 at 7-8.) The Government next contends that Defendant has provided no evidence in support of his claim that the witness who made the recording did so with the purpose of blackmailing him, a crime that would render § 2511(d)(2)'s exception inapplicable even though he has the burden of proof on this issue. (*Id.* at 8.)

The Government provides the following information about the recording:

Two weeks after the victim was released from the military compound where he was tortured, Roggio summoned to his apartment one of the employees whom Roggio forced to watch the torture. Fearing for her safety, the witness covertly recorded the encounter on her cell phone. At trial the witness will authenticate the recording, which is admissible under Federal Rule of Evidence 801(d)(2)(A).

> The following is a draft transcript of a portion of that recording:
>
> *Roggio: I've got to pay taxes, and I cannot hand receipts to the IRS for this shit. See, when – when I make a million dollars – say I make – like this year, $4 million came into my account, right?*
>
> *Witness: Yeah.*
>
> *Roggio: They know this. Then they – when I do my taxes, if I say I spent 4 million, well, then I owe no taxes right? They want to see the receipts of everything I bought. Now, the moment I turn those receipts over to them, that's evidence. Because, when you turn a receipt in to the IRS, you're turning it in to the U.S. federal government. And once they have those receipts, it's admissible for any type of crime. You understand?*
>
> *Witness: Yeah, I understand.*

5

> *Roggio: So, so by paying taxes as profits on all of it, it costs – it costs them more money, but it keeps my ass out of the fire. Because the moment: "OK, you turned in $4 million. What are you doing with gun drills, gun-making parts? This – this is all used for guns, and here's all the evidence that you gave us." Remember, busting me comes from the finances.*
>
> *Witness: Yeah, I know that.*
>
> *Roggio: Not from what I will say. They can – they can fucking arrest me and torture me 'til the day they die, I'll never talk. It's the finances. This is why [first name of victim] went for the finances.*
>
> *Witness: Are you sure that he went for the finances? That he wanted to somehow bust you?*
>
> *Roggio: No, he wanted – he wanted to blackmail me – for whatever, for whatever reason.*
>
> *Witness: Are you sure?*
>
> *Roggio: Yes.*
>
> *Witness: Because I know that the first thing you went in the compound with to see him – he – was $1 million and blah blah blah –*
>
> *Roggio: 100,000.*
>
> *Witness: Yeah, but is it true? Is it true? He wanted to do that? Are you sure?*
>
> *Roggio: Enough to beat him. Enough to torture him.*
>
> *Witness: OK, let's not talk about that.*

Later in the recorded conversation, Roggio said that he could not look the victim in the eye "because of what I did to him." Roggio also

6

bragged that the victim "experienced the overwhelming ability of mine to crush somebody."

(Doc. 175 at 3-5.)

In his reply brief, Defendant states that, if the Court holds an evidentiary hearing, he will provide up to three witnesses who will testify on the issue of whether the individual who made the recording did so to blackmail Defendant. (*See* Doc. 179 at 2-3.) Defendant provides examples of the witnesses' expected testimony. (*Id*.) He identifies the following expected testimony related to blackmail:

- Shortly after the recording at issue was taken, Defendant was having dinner with two individuals.

- During this dinner, Defendant received a call from the individual who took the surreptitious recording.

- The call was placed on speaker, and all three individuals present could hear what the individual who took the surreptitious recording was saying.

- The individual who took the surreptitious recording threatened to publicly expose Defendant, tell Defendant's wife about his affairs, and potentially have him criminally charged with the content of the surreptitious recording.

- The individually specifically threatened to do this unless Defendant paid her 10,000 euros.

(Doc. 179 at 2.) Defendant identifies the following expected testimony which he says would counter the Government's claim that recordings were made because the witness was in fear of Defendant:

7

- The recordings at issue take place for over ten hours and bely [sic] the assertion that this was a brief meeting in which the recorder recorded merely because she was in fear.

- The recorder spent the night at Defendant's apartment that night.

- The recorder had sexual relations with Defendant that night.

- The recorder continued to voluntarily return to Defendant's apartment to spend the night and have sexual relations numerous times thereafter.

(*Id.* at 3.)

The Court concludes that Defendant has proffered sufficient information to warrant an evidentiary hearing concerning the admissibility of the recording at issue. The appropriate scheduling of the hearing is a separate matter.

The Government requests that, if the Court grants Defendant's request for an evidentiary hearing, the Court schedule the hearing to take place during the trial "so that the witness need not travel from Estonia to the United States twice—first for an evidentiary hearing and then a second time for the trial." (Doc. 175 at 15.) In response, Defendant states that he too has two potential suppression witnesses he is attempting to arrange to come here from out of the country but he does not want resolution of the Motion to Suppress to be delayed until trial. (Doc. 179 at 4.) Defendant specifically identifies the need to know the disposition of the Motion to prepare an accurate and effective opening statement and prepare questions for jury selection. (*Id.*)

The Court concludes that the appropriate time to hold an evidentiary hearing cannot be determined because the Court does not have sufficient information about the witnesses who will testify at the hearing, the need for translators, and other relevant data. The Court will, therefore, address the scheduling of the evidentiary hearing at a later date. A separate Order will be entered.

                                                             */s/ Robert D. Mariani*
                                                             Robert D. Mariani
                                                             United States District Judge