UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No.   3:18-CR-0097 |
| v. | : | |
| | : | (Judge Mariani) |
| ROSS ROGGIO,  and | : | |
| ROGGIO CONSULTING Co, LLC | : | |
| Defendants. | : | (electronically filed) |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF BAD ACTS

Defendant Ross Roggio moved *in limine* to exclude as irrelevant three categories of "bad acts" evidence. Docs. 219, 220.

## Video

First, Roggio asks the Court to exclude a video that "purports to depict Roggio assaulting/shoving an employee." Doc. 219 at 2. The government does not plan to introduce the video during its case in chief. If Roggio puts on a defense that is inconsistent with the behavior shown in the video, the government reserves the right to use the video during cross-examination of Roggio or other defense witnesses and reserves the right to seek to introduce the video during the government's rebuttal case.

<u>Sexual Harassment</u>

Second, Roggio asks the Court to exclude evidence that he "sexually harassed" government witnesses. Doc. 219 at 2. What Roggio benignly characterizes as sexual harassment was far more menacing. Sexually coercing certain female employees into having sex with him was one of the ways in which Roggio exercised control over, manipulated, and intimidated his employees. The Estonian employees who worked for Roggio in the Kurdistan region of Iraq were vulnerable to Roggio, who enjoyed a close relationship with Kurdish officials and Kurdish security services – security services that, among other things, controlled who could leave Kurdistan. Roggio's control, manipulation, and intimidation explains why the Estonian employees did not leave Iraq earlier and why one of those employee surreptitiously recorded Roggio to try to protect herself.

Roggio's sexual brutality is evident in the recording. Roggio states that he had sex with the witness the first time as a test of her loyalty and a second time as a penalty for smoking marijuana (once). Roggio asks the witness: "How about I call Goran, those guys, and just strap you naked

2

to that table?" (The witness who made the recording had seen Goran, a Kurdish soldier, torture another Estonian employee at a Kurdish military compound at Roggio's direction.) During the recorded conversation, Roggio tells the witness that "if you have sex with me tonight and tomorrow night like you really want it, you'll never have to have sex with me again."

The government does not affirmatively intend to play the excerpts of the recording quoted above or go into Roggio's sexually coercive conduct during direct examination of the witness who made the recording. However, if Roggio opens the door to such evidence, the government should be permitted to present the complete, truthful account of what took place. In his pleadings to have the recording suppressed, Roggio claimed that the witness made the recording for the purpose of blackmailing him. Doc. 173 at 3; Doc. 179 at 2. Roggio contended that the witness was not afraid of him because, according to him, the witness "had sexual relations with Defendant that night" and "continued to voluntarily return to Defendant's apartment to spend the

night and have sexual relations numerous times thereafter." Doc. 179 at 3.

Roggio can't have it both ways. If the Court permits Roggio to attack the witness's credibility by claiming she voluntarily had sex with him on numerous occasions, the Court should permit the witness to testify about what really happened. Such evidence would not be propensity evidence that is inadmissible under Federal Rule of Evidence 404(b)(1), but rather would be introduced to explain why the witness did what she did – a proper purpose for admission under Rule 404(b)(2).

In its landmark decision regarding 404(b) evidence, the Third Circuit made clear that evidence regarding a witness's credibility is admissible:

> We recognize that in the ordinary case the requisite "proper purpose" explains something about the defendant's motive, plan, or knowledge. This case is unusual in that the proper purpose we have identified relates to a witness's motive, not the defendant's. While this may be uncommon, it is appropriate. Rule 404(b) provides that evidence of other crimes is inadmissible to prove the character of "a person," but may be admissible as proof of that person's "motive, opportunity, intent," etc. It does not specify that evidence is only admissible to prove the defendant's motive. . . . In this case, the fact that evidence of Green's threat helped to explain

Stahl's motives for acting as an informant was sufficient to satisfy Rule 404(b).

*United States v. Green*, 617 F.3d 233, 250 (3d Cir. 2010).

If Roggio wants to argue that the witness who made the recording voluntarily had sex with him, the witness should be free to testify about the manner in which Roggio frightened and intimidated her, including how he manipulated her into having sex because she feared torture or death would be the alternative.

<u>Prior Business Dealings</u>

Third, Roggio asks the Court to exclude testimony from "former business associates who have claimed that Roggio fraudulently used company credit cards and misappropriated company funds." Doc. 219 at 3. The government does not intend to focus on Roggio's past shady business dealings and previous failed weapons projects, but limited testimony is intrinsic to proving that Roggio illegally exported U.S. weapons parts and defense services to Iraq and – together with Kurdish soldiers – tortured one of his employees.

Regarding the arms export charges, William Mathes will testify that Roggio purchased M4 bolt gas rings and firing pin retainers from Mathes' company, OML Global. Mathes obtained the weapons parts from another company – a company that Roggio could not buy directly from because, as Roggio told Mathes, the other company would not speak to Roggio as a result of previous business dealings. The government will also elicit testimony from an employee of the ATF who provided Roggio with briefings on federal regulations and statutory law relevant to firearms manufacturing. These briefings include information related to export law, and are given to individuals involved in firearms manufacture.

Regarding the torture charges, Roggio's motive for the torture was his fear that the victim would reveal to Kurdish officials that Roggio would be unable to deliver the quantity and quality of parts that Kurdish officials were paying Roggio to manufacture. One reason for Roggio's inability to manufacture the weapons is that he diverted for personal use money his company was receiving from the Kurds. The government witness who will testify to having introduced Roggio to Kurdish officials

6

will testify that, while Roggio was in Kurdistan working on the weapons project, Roggio sent him $50,000 that Roggio owed the witness's wife in unpaid wages from one of Roggio's previous failed weapons endeavors in the United States.

The limited testimony the government intends to introduce about Roggio's past business dealings is thus intrinsic to proving the crimes. If the Court determines that the evidence is not intrinsic, then the evidence should be admitted under Rule 404(b)(2).

Rule 404(b) "is a rule of inclusion rather than exclusion." *United States v. Jemal*, 26 F.3d 1267, 1272 (3d Cir. 1994). Evidence of other wrongs is admissible "for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime." *United States v. Long*, 574 F.2d 761, 765 (3d Cir. 1978). To be admissible under Rule 404(b), evidence of uncharged wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it. *Green*, 617 F.3d at 249 (citing *United States v. Butch*, 256 F.3d 171, 175 (3d Cir.2001)).

7

First, "helpful background information to the finder of fact" is a legitimate, non-propensity purpose. *See Green*, 617 F.3d at 250. That Roggio went through Mathes to buy certain weapons parts instead of the original manufacturer and that Roggio diverted money from the Kurdish project to his own use helps complete the story of Roggio's criminal conduct. Second, and similarly, the reason Roggio went to one U.S. weapons parts vendor instead of another helps establish that Roggio did, in fact, export weapons parts from the United States. Diverting money to pay past business debts helps explain why Roggio was unable to produce the weapons and thereby explains why he used torture to keep the victim from informing Kurdish officials that Roggio would be unable to produce the weapons. Third, the probative value of limited testimony in this area is not outweighed by the danger of unfair prejudice. Fourth, the proposed jury instructions will include a limiting instruction.[1] The government should be given some latitude in questioning witnesses about their past business dealings with Roggio, as those past dealings provide context for

---

[1] In an abundance of caution, the government is simultaneously filing a Rule 404(b) notice regarding the evidence discussed herein.

Roggio's illegal arms exports and torture. The testimony related to ATF briefing of export law go to Roggio's familiarity and knowledge of the United State's export regime of firearm manufacturing tools and parts.

For all of the reasons above, the government respectfully requests that the Court deny Roggio's motion.

Dated: April 18, 2023                          Respectfully submitted,

                                               GERARD M. KARAM
                                               UNITED STATES ATTORNEY

                                               */s/ Todd K. Hinkley*
                                               Todd K. Hinkley
                                               Assistant U.S. Attorney
                                               Atty ID No. PA 68881
                                               235 N. Washington Ave.
                                               Scranton, PA 18503

                                               KENNETH A. POLITE, JR.
                                               Assistant Attorney General

                                               */s/Patrick Jasperse*
                                               Patrick Jasperse
                                               Trial Attorney
                                               Criminal Division
                                               U.S. Department of Justice
                                               Human Rights and Special
                                               Prosecutions Section

                                               MATTHEW G. OLSEN.
                                               Assistant Attorney General

/s/Scott A. Claffee
Scott A. Claffee
Trial Attorney
National Security Division
U.S. Department of Justice
Counterintelligence and Export
Control Section

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on April 18, 2023, he served a copy of the above document via ECF on Gino Bartolai, Esq., counsel for defendants.

s/ Todd K. Hinkley
TODD K. HINKLEY
Assistant U.S. Attorney