THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : 3:18-cr-0097 |
| v. | : (Judge Mariani) |
| | : |
| ROSS ROGGIO and | : |
| ROGGIO CONSULTING COMPANY, | : |
| LLC, | : |
| | : |
| Defendants. | : |

**MEMORANDUM OPINION**
**I. INTRODUCTION**

Here the Court considers Defendant's four pending motions in limine: 1) Roggio's Motion in Limine Bad Acts (Doc. 219); 2) Roggio's Motion in Limine Sidiropoulou State Customs Border Protection (Doc. 221); 3) Roggio's Motion in Limine Testimony of Kristy Lynn Roggio-Merring (Doc. 223); and 4) Roggio's Motion in Limine Expert Opinion Torture (Doc. 225). The Court also considers the Government's in Limine Motion to Introduce the Testimony of Roggio's Ex-spouse (Doc 234).

Trial in this matter is set to commence on May 8, 2023, on the thirty-nine counts identified in the Superseding Indictment (Doc. 122) filed on February 15, 2022: Count One – Conspiracy to Commit Torture; Count Two – Torture; Count Three – Conspiracy to Commit an Offense Against the United States; Count Four – Arms Export Control Act; Count Five – International Emergency Economic Powers Act; Count Six – Export Control Act; Counts

Seven and Eight – Smuggling Goods from the United States; Counts Nine through Eleven – Wire Fraud; and Counts Twelve through Thirty-Nine – Money Laundering.

## II. STANDARD OF REVIEW

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017). A court may exercise its discretion to rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Nevertheless, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Tartaglione*, 228 F. Supp. 3d at 406. "[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3, 120 S. Ct. 1851, 146 L. Ed. 2d 826 (2000).

Further, while motions in limine may serve as a useful pretrial tool that enables more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity." *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012). Indeed, "motions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506,

518 n.10 (3d Cir. 1997). Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013). Moreover, "*pretrial Rule 403 exclusions should rarely be granted. . . .* [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original).

### III. ANALYSIS

#### A. Prior Bad Acts

Defendant's motion in limine regarding prior bad acts identifies discovery turned over by the Government which Defendant maintains should be inadmissible at trial pursuant to Federal Rule of Civil Procedure 404(b): 1) a video that purports to depict Defendant assaulting/shoving an employee in Iraq; 2) the reports of several potential witnesses who have claimed that Defendant sexually harassed them; and 3) FBI reports of Defendant's former business associates who have claimed that Defendant fraudulently used company credit cards and misappropriated company funds. (Doc. 219 at 2-3; Doc. 220 at 1-2.)

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).

3

However, "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 401(b)(2). "Rule 404(b) is a rule of general exclusion . . . . That is, Rule 404(b) directs that evidence of prior bad acts be excluded – *unless* the proponent can demonstrate that the evidence is admissible for a non-propensity purpose." *United States v. Repak*, 852 F.3d 230, 240 (3d Cir. 2017) (internal citations and quotation marks omitted) (emphasis in original).

As to the video, the Government responds that it does not intend to introduce the video in its case in chief but may do so during cross-examination of Defendant or other defense witnesses or during its rebuttal if Defendant puts on a defense that is inconsistent with the behavior shown in the video. (Doc. 240 at 1.) Similarly, the Government states that it does not intend to go into Defendant's sexually coercive conduct during direct examination of the witness who surreptitiously made a recording of a conversation she had with Defendant but may do so to bolster the witness's credibility. (*Id.* at 2-3.) Regarding Defendant's former business dealings, the Government states that limited testimony on this subject is intrinsic to proving that Defendant illegally exported U.S. weapons parts and defense services to Iraq and tortured one of his employees. (*Id.* at 5.)

The foregoing summary indicates that the context within which the Government may seek the introduction of the evidence at issue is critical to the question of admissibility. Therefore, Defendant's motion in limine seeking to preclude evidence of prior bad acts will

be denied without prejudice to Defendant raising a specific objection at trial if and when the Government seeks to introduce the evidence at issue.

## B. Sidiropoulou Statement

Defendant's second motion in limine asks the Court to exclude a statement by Christina Sidiropoulou made to Customs and Border Protection Agents on February 26, 2017, at JFK Airport after she arrived there with Defendant because the statement is inadmissible hearsay. (Doc. 221 at 2-3; Doc. 222 at 2, 4.) The statement was memorialized in a U.S. Customs and Border Protection report dated February 27, 2017. (*Id.*)

The Government responds that Sidiropoulou's statement differs from that given by Defendant when he was questioned at JFK on the same date. (Doc. 242 at 2.) The Government also states that it does not intend to attempt to admit the evidence during its case in chief or otherwise introduce Sidiropoulou's statement into evidence. (*Id.*) However, the Government indicates that it may seek to use the material in the Customs and Border Protection report and related reports to cross-examine Sidiropoulou, Defendant, and other witnesses. (*Id.* at 3.)

Given the Government's clarification of the potential bases upon which it may seek admission of the evidence at issue, the Court cannot determine in advance of trial the proper application of the context specific Federal Rules of Evidence hearsay rules.

Therefore, Defendant's motion related to Sidiropoulou's statement is properly denied without prejudice to Defendant raising a specific objection at trial if and when the Government seeks to introduce the evidence at issue.

## C. Testimony of Defendant's Ex-spouse

Defendant next contends that the statements and testimony of his former spouse should not be permitted at trial due to the marital communications privilege.[1] (Doc. 223 at 2-3; Doc. 224 at 2-3.) In support of his motion, Defendant specifically points to an interview conducted by law enforcement agents on April 29, 2016—a time when Ms. Roggio was married to Defendant—that may have referenced confidential marital communications. (Doc. 224 at 2-3.) Defendant asserts he "believes from that moment on, Kristy Lynn Roggio Merring was turned against him as a witness and thereafter repeatedly disclosed confidential marital communications." (*Id.* at 5.)

The Government has also filed a motion concerning the marital privilege related to confidential communications, the Government's in Limine Motion to Introduce the Testimony of Roggio's Ex-spouse (Doc. 234). In its supporting brief, the Government maintains that Defendant cannot satisfy the elements required to invoke the privilege and that the criminal activity exception to the privilege applies here. (Doc. 235 at 18-21.)

---

[1] Defendant's ex-wife is identified by Defendant as Kristy Lynn Roggio-Merring and Krysty Lynn Roggio Merring. (*See* Docs. 223, 224.) She is identified by the Government as Kristy Merring-Roggio and Kristi Merring-Roggio. (*See* Doc. 234.) The Court will refer to Defendant's ex-wife as Ms. Roggio.

Rule 501 of the Federal Rules of Evidence provides in pertinent part that "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege" unless certain exceptions not applicable here apply. Fed. R. Evid. 501. Thus, the Court will first turn to consideration of the marital privilege by the Court of Appeals for the Third Circuit, lower courts applying Third Circuit precedent, and decisions upon which the Third Circuit has relied.

> Two distinct privileges are associated with the marriage relationship.
>
> The privilege against adverse spousal testimony, which prevents one spouse from being compelled to testify against the other, rests with the testifying spouse, who may choose to waive it. *Trammel v. United States,* 445 U.S. 40, 53, 100 S. Ct. 906, 913, 63 L.Ed.2d 186 (1980). This privilege, designed to protect the marriage relationship as it exists at the time of trial, "applies to all testimony of any kind." *See* 2 Wright & Miller, *Federal Practice & Procedure* 2d § 406 (1983). In contrast, the marital communications privilege prevents a testifying spouse from disclosing confidential communications between the spouses. It "reaches only those communications made in confidence and intended to be confidential." *Id.*

*United States v. Ammar*, 714 F.2d 238, 258 (3d Cir. 1983). The marital communications privilege is held by both spouses, including the nontestifying spouse, and can be asserted even after the marriage ends. *United States v. Tartaglione*, 228 F. Supp. 3d 401, 407 (E.D. Pa. 2017) (citing 3 *Weinstein's Federal Evidence* § 505.09 (2d ed. 2016)); *see also United States v. Xi*, Crim. Action No. 16-22-5, 2021 WL 3910749, at *17 (E.D. Pa. Sept. 1, 2021).

In *Ammar*, the government argued that "while marriages involving criminal activity may still be worthy of protection, specific marital communications in furtherance of that criminal activity are not deserving of protection." *Id.* The Circuit Court reasoned that the

7

marital communications privilege "is akin to the attorney-client privilege [which is] also designed to protect the confidences of the communicator [and] has been held not to extend to communications in furtherance of criminal activity. *See Clark v. United States,* 289 U.S. 1 (1933); *In re Grand Jury Proceedings,* 604 F.2d 798, 802 (3d Cir.1979). On this basis, the Third Circuit "join[ed] the other circuits in holding that communications between spouses pertaining to ongoing or future criminal activity, are not protected against disclosure by the privilege for confidential marital communications." *Id.*

In *United States v. Hill*, 967 F.2d 902 (3d Cir. 1992), the Third Circuit also addressed the criminal activity exception (also known as the crime-fraud exception) to the marital communications privilege, stating "where certain communications have to do with the commission of a crime in which both spouses are participants, the conversation does not fall within the marital privilege." *Id.* at 911 (citing *United States v. Broome*, 732 F.2d 363, 365 (4th Cir.) *cert. denied*, 469 U.S. 855 (1984); *Ammar*, 714 F.2d at 257-58). The Circuit Court explained the rationale for the exception to the marital communications privilege, stating that

> [t]his exception "reflects the balancing between public interests in fostering open and honest communications between husband and wife and according a sufficient degree of privacy to marital relationships, on the one hand, and the revelation of truth in the attainment of justice, that also are in the public interest, on the other.... This exception reflects the belief that the greater public good will result from permitting the spouse of an accused to testify willingly concerning their joint criminal activities than would come from permitting the accused to erect a roadblock against the search for truth."

*Hill*, 967 F.2d at 912 n.13 (quoting *United States v. Parker*, 834 F.2d 408, 411 (4th Cir.1987)).

8

*Hill* further noted that the privilege "extends only to utterances, not acts," *id.* (citing *Pereira v. United States,* 347 U.S. 1, 6 (1954), and "'[t]estimony concerning a spouse's conduct can be precluded upon the spouse's challenge only in the rare instances where the conduct was intended to convey a confidential message from the actor to the observer,'" *id.* (quoting *United States v. Estes,* 793 F.2d 465, 467 (2d Cir.1986). *Hill* also reiterated that "the privilege is inapplicable where a third party is present during a communication between spouses, because that person's presence 'negatives the presumption of privacy.'" *Id.* (quoting *Parker,* 834 F.2d at 411).

In applying the law to the facts of the case, *Hill* noted that the admissibility of the wife's testimony about conversations related to criminal activity over her husband's objection "is governed by Mrs. Hill's role in Hill's criminal activity." *Id.* at 912. The Circuit Court concluded that the privilege was not violated because Mrs. Hill, even though she was not prosecuted, was at times a joint participant in her husband's criminal activity. *Id.* (citing *Parker*, 834 F.2d at 412). *Parker* noted that "[t}he cases involving the application of this exception to the marital privilege are uniform in their holdings that it applies to communications that have to do with "the commission of a crime in which both spouses are participants." 834 F.2d at 412 (citing *Broome,* 732 F.2d at 365).

*Tartaglione* identified three elements which must be met by a defendant who wishes to invoke the marital communications privilege: the defendant must show that (1) a valid marriage existed at the time of the communication, (2) the privilege is being applied "only to

utterances or expressions intended by one spouse to convey a message to the other," and (3) the communication was made in confidence." 228 F. Supp. 3d at 407 (citing *Wolfle v. United States*, 291 U.S. 7, 14 (1934)). Regarding confidentiality, *Wolfle* explained that "[c]ommunications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged; but, wherever a communication, because of its nature or the circumstances under which it was made, was obviously not intended to be confidential, it is not a privileged communication." 291 U.S. at 14.

Because the Court is lacking sufficient detail about the communications at issue, the testimony the Government intends to introduce, and the testimony Defendant seeks to preclude, the parties' motions regarding spousal privilege will be denied without prejudice to being raised by specific objection at trial.

Although the Court makes no determination at this juncture as to the admissibility of evidence arguably excluded under the marital communications privilege, the Court herein reviews the parties' divergent positions on the criminal activity exception to the privilege in order to assess the appropriate legal framework within which to consider the issue should it arise at trial.

The parties disagree on the parameters of the criminal activity exception to the marital communications privilege. Defendant contends the exception only applies when both spouses are participants in the commission of the crime and here Ms. Roggio was not a

participant. (Doc. 255 at 2 (citing *Hill*, 967 F.2d at 911).) The Government argues that the exception applies because it is only necessary that the speaker know that the communication is in furtherance of a crime. (Doc. 235 at 20 (citing *Tartaglione*, 228 F. Supp. 3d at 408 n.3).)

*Tartaglione* determined that the spousal communication privilege did not apply because the telephone communications were between the defendant and her incarcerated spouse and "the law is clear that, where one spouse is imprisoned, communications between the married couple on prison telephones are not made in confidence." 228 F.3d at 407. Thus the issue of what the spouse not asserting the privilege knew or his participation in the criminal activity was not relevant to the District Court's determination. Rather, the Government's reliance on *Tartaglione* is based on a discussion in the margin:

> At the hearing, the Government also argued that the prison recordings would be admissible under the crime-fraud exception. Even if the conversations were made in confidence, there is an exception to the confidential marital communications privilege that would not protect these conversations—the crime-fraud exception. *See United States v. Ammar*, 714 F.2d 238, 258 (3d Cir. 1983) ("We join other circuits in holding that communications between spouses pertaining to ongoing or future criminal activity are not protected against disclosure by the privilege for confidential marital communications."). Under the crime-fraud exception, conversations between spouses that would otherwise be protected from disclosure are admissible when the conversations were "in furtherance of a crime or fraud in which the speaker was a knowing participant ... or where the husband and wife are joint participants in criminal activity whether or not each spouse is prosecuted." *Andrews v. Holloway*, 256 F.R.D. 136, 147 (D.N.J. 2009) (citing *United States v. Hill*, 967 F.2d 902 (3d Cir. 1992)). Although the Government argued that the prison recordings would be admissible under the crime-fraud exception, the Court would need more information about the contents of the phone calls to make a determination on whether this exception would permit the prison recordings to be presented at

11

> trial. Moreover, the Government has stated it would only play portions of the conversations to protect the confidentiality of the spousal conversations that do not relate to the offenses charged.

*United States v. Tartaglione*, 228 F. Supp. 3d at 408 n.3.

Upon analysis of the foundation of the Government's assertion that "it is only necessary that the speaker know that the communication is in furtherance of a crime" (Doc. 235 at 20), the Court finds that the Government's reliance on *Tartaglione* to support its position is misplaced. *Tartaglione* relies on *Holloway* which in turn relies on *United States v. Estes*, 793 F.2d 465 (2d Cir. 1986), in support of the statement that, under the crime-fraud exception, conversations between spouses that would otherwise be protected from disclosure are admissible when the conversations were "in furtherance of a crime or fraud in which the speaker was a knowing participant." See *Holloway*, 256 F.R.D. at 147 (citing *Estes*, 793 F.2d 465). *Estes* does not support a conclusion that the crime-fraud exception's application does not require that both spouses are participants in the criminal activity. Rather, *Estes* found that a communication between the defendant and his wife about the defendant's criminal act which occurred before the communication without her knowledge should have been excluded at trial based on the confidential marriage communication privilege because the crime-fraud exception, the basis upon which it was admitted at trial, did not apply. 793 F.2d at 466. In other words, as in *Hill*, *Estes*' recognized that *joint* criminal activity was a requirement for the application of the crime-fraud exception. Thus, should the application of the crime-fraud exception to the marital communications privilege

12

become an issue at trial, the Court will follow *Hill's* formulation of the exception to the privilege, i.e., "where certain communications have to do with the commission of a crime *in which both spouses are participants*, the conversation does not fall within the marital privilege," 967 F.2d at 911 (emphasis added).

### D. Expert Opinion on Torture

With his fourth motion in limine, Defendant seeks to preclude potential testimony of Zuhair Jumaah Al-Maliki, the Government's expert witness who, as per the Government's expert disclosure, will testify that in 2015 "(1) torture was illegal under Iraqi criminal statutes; (2) torture was illegal under Iraqi criminal statutes; and (3) unlawful detention was illegal in Iraq and detention was legal only if authorized by a judicial proceeding and had to have been in a lawful place for detention." (Doc. 260-1 at 1.) The disclosure also states that Al-Maliki "may testify as to whether certain actions described to him would constitute torture under Iraqi law." (*Id.*) Defendant objects only to testimony about whether certain specific actions would constitute torture under Iraqi law. (Doc. 227 at 4; Doc. 260 at 2.) He states that "what the Government should not be able to do is go through the list of specific acts alleged in paragraphs 12-16 and 19 [of the Superseding Indictment] and elicit opinions from its expert that said specific acts amount to torture under Iraqi law." (Doc. 260 at 2-3.)

In Count One of the Superseding Indictment, Defendant is charged with Conspiracy to Commit Torture in violation of 18 U.S.C. §§ 2340 and 2340A(c). In Count Two, Defendant is charged with Torture in violation of 18 U.S.C. §§ 2340, 2340A(a) and 2. The

13

statute defines torture as "an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control." 18 U.S.C.A. § 2340(1).

Defendant seeks to exclude testimony that certain actions would constitute torture under Iraqi law pursuant to Federal Rule of Evidence 704. (See Doc. 227 at 4.) Rule 704 addresses "Opinion on an Ultimate Issue" and states as follows:

> **(a) In General--Not Automatically Objectionable.** An opinion is not objectionable just because it embraces an ultimate issue.
>
> **(b) Exception.** In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

Fed. R. Evid. 704.

Defendant first asserts that "because torture is a specific intent crime an experts [sic] opinion that certain acts amount to torture embraces the actors [sic] mental state and should not be permitted." (Doc. 227 at 4.) Defendant cites *United States v. Davis*, 726 F.3d 434, 446 (3d Cir. 2013), in support of the proposition that "an expert may not draw the ultimate conclusion for the jury or testify in such a way that the ultimate conclusion is inevitable." (Doc. 227 at 4.) Defendant also argues that what constitutes torture under Iraqi law is irrelevant and immaterial to the charged offenses and could be misleading. (*Id.* at 5.) Finally, Defendant contends that the probative value, if any, of the evidence he seeks to

14

exclude is substantially outweighed by the danger of unfair prejudice and should be excluded pursuant to Federal Rule of Evidence 403. (*Id.*)

The Government responds that it "needs to establish that the acts of which Roggio is accused could not have been 'pain and suffering incidental to lawful sanctions' in Iraq in 2015" and it plans to meet this requirement through expert testimony that the specific acts alleged in paragraphs 12-16 and 19 of the Superseding Indictment could not have been incidental to lawful sanctions under the law and constitution in Iraq in 2015. (Doc. 241 at 3.)

The Court concludes that Defendant has not shown that testimony concerning what were "lawful sanctions" in 2015 in Iraq is irrelevant to the definition of torture in 18 U.S.C. § 2340(1) or that such testimony would necessarily impermissibly allow the Government's expert witness to state an opinion about whether the defendant "did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense," Fed. R. Evid. 704(b). Defendant's conclusory assertion that the probative value of the evidence is substantially outweighed by a danger of unfair prejudice or confusing the issues does not satisfy his burden of showing that the evidence at issue should be excluded pursuant to Federal Rule of Evidence 403. The alleged torture took place in Iraq and the statutory definition of torture excludes pain and suffering "incidental to lawful sanctions," 18 U.S.C.A. § 2340(1). While expert testimony about intent related to specific acts set out in the Superseding Indictment will not be allowed, for the foregoing reasons, Defendant's motion will be denied without prejudice to Defendant raising a specific objection at trial.

## IV. CONCLUSION

Fort the reasons set forth above, Defendant's motions in limine (Docs. 219, 221, 223, 225) and the Government's in Limine Motion to Introduce the Testimony of Roggio's Ex-spouse (Doc 234) will be denied without prejudice to being raised by specific objection at trial. A separate Order will be entered.

_____
Robert D. Mariani
United States District Judge