# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **NO.: 3:18-CR-97** |
| **vs.** | **(JUDGE MARIANI)** |
| **ROSS ROGGIO,**<br>            **Defendant** | |

### DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, ROSS ROGGIO, by and through his court-appointed CJA counsel, WILLIAM J. WATT, III, ESQUIRE, hereby submits this sentencing memorandum in anticipation of sentencing before this Court.

## I.     PROCEDURAL HISTORY

An Indictment was filed on March 20, 2018 charging the Defendant with thirty-seven (37) counts.[1]  The Defendant was detained on the charges on March 23, 2018 and subsequently released on pretrial supervision on April 2, 2018. (Doc. 13).  A Superseding Indictment was filed on February 15, 2022 charging the Defendant with thirty-nine (39) counts. (Doc. 122) (hereinafter the "Indictment."). The Defendant was detained by Order dated February 17, 2022 and has been in custody since that time. (Doc. 134). On May 19, 2023, the Defendant was convicted on all counts following a jury trial. (Doc. 319).

---

[1] For sake of brevity, the actual charges will not be set forth in detail.  The Court is fully aware of the nature of the case and the charges.  To the extent a specific charge is discussed in detail later in this Memorandum, specific reference to the charge and statute will be provided.

On March 27, 2024, the Probation Office filed its final Presentence Report. (Doc. 350).  The Probation Office determined the Defendant's guideline sentence range to be 7,500 months (625 years).  For reasons set forth below, the Defendant objects to the guideline range. Sentencing is scheduled for April 15, 2024.

## II.      RELEVANT FACTUAL HISTORY

The Court is familiar with the facts as alleged by the Government. The Defendant disagrees with a substantial portion of the Government's allegations. However, the Defendant is cognizant of the Court's role at sentencing.  As such, the Defendant will not seek to re-litigate the facts of the case at sentencing. Instead, the facts that are relevant to each objection below will be set forth in more detail below.

## III.    ARGUMENT REGARDING OBJECTIONS TO PRESENTENCE REPORT

### 1. Application of USSG §2A4.1(a) (Paragraph 43 and related Paragraphs in PSR)

Paragraph 43 of the Presentence Report ("PSR") sets forth a Base Offense Level of 32 as determined by the Probation Office. The Defendant objects to this Base Offense Level and submits that the correct Base Offense Level is 14.

As correctly noted in the Addendum to the PSR (Doc. 351), the Appendix to the United States Sentencing Guidelines directs that five (5) different guideline sections can apply to a conviction of 18 U.S.C. §2340A (Torture). It is the Court's province to determine "which of the referenced guideline sections is most

appropriate for the offense conduct charged in the count of which the defendant was convicted" *See* USSG §1B1.2 Application Note 1. The five (5) guideline sections that can apply are as follows:

      a.  2A1.1 – Murder

      b.  2A1.2 – Second Degree Murder

      c.  2A2.2 – Attempted Murder

      d.  2A2.2 – Aggravated Assault

      e.  2A4.1 – Kidnapping, Abduction, Unlawful Restraint

It is undisputed that the guideline sections relating to Murder to not apply. The Probation Office determined that USSG §2A4.1 (Kidnapping, Abduction, Unlawful Restraint) is the most appropriate considering the conduct alleged against the Defendant. The Defendant disagrees and respectfully submits that USSG §2A2.2 (Aggravated Assault) is most analogous to the crime of Torture that was charged by the Government.  Should the Court determine that USSG §2A2.2 is the more appropriate guideline range, the Base Offense Level would be 14. *See* USSG 2A2.2.

### a.  Standard of Proof

Prior to the Court entertaining argument on this objection, it must be determined what standard of proof is required by the Government.  The Defendant acknowledges the general rule that due process does not require a higher standard of proof than preponderance of the evidence to protect a defendant's interest in the

accurate application of the guidelines at sentencing. *See* United States v. Mobley, 956 F.2d 450 (3d. Cir. 1992); *see also* United States v. Restrepo, 946 654 (9th Cir., 1991).  However, when the application of the guidelines relies on an uncharged crime or acquitted conduct, the Defendant submits that proof of the uncharged crime must be established by Government by clear and convincing evidence. *See* Mobley at 458 (*citing* United States v. Kikumura, 918 F.2d 1084); *see also* United States v. Mezas de Jesus, 217 F.3d 638 (9th Cir, 2000).

The 9th Circuit decision in Mezas de Jesus is analogous to the instant case. In Mezas de Jesus, the Court was confronted with the same argument being made by the Defendant herein. Specifically, defendant in Mezas de Jesus objected to the application of USSG §2A4.1 (kidnapping) for sentencing purposes relating to his conviction of 28 U.S.C. §922(g)(5) (unlawful possession of a firearm by an undocumented immigrant).  The court determined that the nine-level increase occasioned by the application of USSG §2A4.1 warranted an increase in the standard of proof to clear and convincing evidence. Id. at 643.

In the instant matter, the application of USSG §2A4.1 (Kidnapping) or USSG §2A2.2 (Aggravated Assault) carries an eighteen-level distinction.  For this reason, the Defendant respectfully suggests that a higher burden of proof is required in order to protect his right to due process.

### b. **Application of USSG §2A2.2 (Aggravated Assault)**

As stated earlier, the Appendix to the United States Sentencing Guidelines allows for five (5) separate guideline ranges to be applied when an individual is convicted of 18 U.S.C. §2340A (Torture).  The Defendant submits that the Court should apply the guideline range for Aggravated Assault and not Kidnapping as determined by the Probation Office.

To determine the applicable guideline range, the Court is required to determine which of the referenced guideline sections is most appropriate for the offense conduct charged in the count of which the defendant was convicted. *See* USSG §1B1.2 Application Note 1.

In the instant matter, Counts 1 & 2 both charge violations of 18 U.S.C. §2340 and §2340A (Torture).  The Defendant was not charged or convicted of Kidnapping.  Torture is defined as "an act committed by a person acting under the color of law specifically intended to inflict sever physical or mental pain or suffering upon another person within his custody or physical control." 18 U.S.C. §2340(1).  It is undisputed that the gist or gravamen of the crime of Torture is an assault.  Without an assault (an act intended to inflict severe physical pain or suffering), there can be no Torture.

This argument is bolstered by the Indictment itself that details the acts allegedly committed that were intended to inflict severe physical and mental pain. The Government has not alleged that the detainment of the victim was an "act that

was intended to inflict severe physical and mental pain." On the contrary, the conditions in which the victim was detained were not inhumane or intolerable. The evidence at trial supports this position. The victim was on a military base with separate living quarters, played games with members of the military when the Defendant wasn't present, and complained about his inability to exercise.[2]

The Sixth Circuit case of United States v. Mills, 1 F.3d 414 (6th. Cir. 1993) is persuasive authority that directly addresses this issue. In Mills, the defendant committed a burglary of a pharmacy. After burglarizing the pharmacy, the defendant was attempting to allude law enforcement when he lost control of his vehicle and seriously injured a law enforcement officer. The crime of pharmacy burglary (18 U.S.C. §2118) is similar to Torture in that the guidelines allow for multiple guideline ranges to be elected based on the relevant conduct. The 6th Circuit determined that the lower court's application of the Aggravated Assault guideline range, instead of the Burglary Guideline range, was inappropriate. In reaching this conclusion, the court recognized that an assault occurred when the defendant seriously injured a law enforcement officer with his vehicle. However, proof of the assault was *not* needed in order to obtain a conviction for Pharmacy Burglary. Proof of the assault was only needed as a sentencing enhancement. Since the gravamen of the offense was pharmacy burglary, the assault merely enhanced

---

[2] Undersigned counsel was not trial counsel for the Defendant. References to the trial testimony in this Memorandum is based on information provided.

the sentence. Mills at 421.

The same analysis can be applied to the instant case. The government did not need to prove Kidnapping to obtain a conviction for Torture. On the contrary, Torture only requires the victim to be "within his (the defendant's) physical custody or control."  The "custody" or "control" that is required for a conviction of Torture need *not* be an unlawful seizure.  On the other hand, Kidnapping does require an "unlawful seizure" to obtain a conviction. *See* 18 U.S.C. §1201(a). As a result, the gravamen of the crime of Torture is *not* an unlawful seizure or unlawfully obtaining custody or control of an individual unless the act of seizing custody of the victim causes severe physical or mental harm. The Government has not alleged that the custodial detention was, standing alone, an act that was intended to cause severe physical or mental pain. For this reason, the gravamen of the crime of Torture is Aggravated Assault, not Kidnapping.

In addition, it is important to remember that statutory interpretation requires an examination of the crime of Kidnapping as it relates to the facts and circumstances of the instant case. The offense of Kidnapping (18 U.S.C. §1201) has undergone significant scrutiny by our courts to limit its application to appropriate circumstances. *See* Chatwin v. United States, 326 U.S. 455 (1946). Most importantly, the Courts have developed factors to guide courts in defining kidnaping.  In Government of the Virgin Islands v. Berry, 604 F.2d 221 (3d. Cir. 1979), the Third Circuit developed the following factors a court must consider

when determining the applicability of kidnapping:  (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense. Id. at 227.

The Berry factors weigh in favor of the Defendant. As in Berry, any detention of the victim in the instant matter occurred during the commission of a separate offense (Torture).  Likewise, an element of Torture requires the victim to be in the control or custody of the defendant and it is therefore "inherent" in the separate offense of Torture. Finally, the asportation or detention in the instant matter did not create a significant danger to the victim independent of that posed by the separate offense. On the contrary and as previously stated, the victim was not detained in inhumane conditions and the detention itself did not form the basis for the government's allegation of severe physical or mental pain.  For this reason, the Defendant submits that the elements of the crime of Kidnapping are missing, thereby resulting in the kidnapping guideline range being inapplicable.

## 2.  **Application of USSG §2A4.1(b)(2)(B) (Paragraph 44)**[3]

The PSR includes a two (2) level enhancement pursuant to USSG §2A4.1(b)(2)(B) for "serious bodily injury."  The Defendant objects to this enhancement and maintains that the government has not proven that the victim suffered "serious bodily injury" warranting this enhancement.

As the Probation Office correctly points out in its Addendum (Doc. 351), "serious bodily injury" is defined in the Commentary to USSG §1B1.1. It is defined as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation."

In order to be convicted of Torture, the government was required to prove "severe physical or mental pain."  The government was not required to prove "extreme" physical pain.  It is clear that "extreme" physical pain is a higher threshold of pain that requires more significant pain than "severe" pain. The Defendant submits that the evidence elicited at trial did not prove "extreme" physical pain.

Moreover, a plain reading of USSG §1B1.1 shows that an "injury" must be present that causes the extreme pain or impairment of a bodily function or requiring medical intervention. In order to meet this requirement, it is insufficient

---

[3] The Defendant maintains that the Kidnapping guideline section should not be applied consistent with the argument set forth earlier in the Memorandum.  The Defendant's objections to the application of the Kidnapping guideline section enhancements should not be construed as an admission.

to show merely infliction of extreme physical pain.  There must first be an
"injury."

The Defendant submits that the Government did not prove an "injury".
Likewise, the Probation Office's speculation that the victim's injuries "would have
required hospitalization if available to him" is without basis. No such evidence was
submitted at trial. Moreover, the Sentencing Guideline does not make "probable"
hospitalization an element that must be met.  USSG §1B1.1 *requires* medical
intervention such as surgery, hospitalization, or physical rehabilitation.  It is
undisputed that the victim was not hospitalized and did not require medical
intervention. For this reason, the enhancement set forth herein is inapplicable.

### 3. Application of USSG §2A4.1(b)(4)(A) (Paragraph 46)

The Defendant objects to the application of this enhancement for detaining
an individual for more than thirty (30) days.  There has been no judicial
determination leading to the conclusion that the detainment of the victim was
unlawful.  As previously stated, Kidnapping requires an "unlawful" detention.
Torture does not. A lawful detention for more than 30 days will not result in the
application of USSG §2A4.1.

In addition, the Defendant submits that the evidence at trial proved that the
victim was detained by a foreign military and/or government.  The Defendant did
not have the ability or authority to detain the victim under color of law.  Whether
the Defendant assaulted the victim while he was in lawful custody is a separate

consideration that the Defendant is not challenging.  However, the Defendant

should not be subjected to enhanced punishment due to the actions of a foreign

government or military.  Most importantly, there has been no judicial finding that

the detention was illegal because such a finding is not required in order to prove

Torture. It is only required to prove Kidnapping and Kidnapping was not a crime

charged.

4. **Application of USSG §3B1.1 (Paragraph 48)**

The Defendant objects to an enhancement pursuant to USSG §3B1.1 due to

the involvement of five (5) or more participants.

United States v. Tai, 750 F.3d 309 (3d. Cir. 2014) defines a "participant" as

an individual who is criminally responsible for the same conduct as the defendant.

To be criminally responsible, the individual(s) must "have committed all of the

elements of the statutory crime with the requisite mens rea." Id.

In the instant matter, the elements of the statutory crime of Torture require

that the individual be a United States national or present in the United States at the

time of the offense. 18 U.S.C. §2340A(b)(1-2).  The individuals identified as

"participants" for this enhancement are soldiers of a foreign military. They are not

United States nationals and the offense did not take place in the United States.  As

such, none of the "participants" have met all of the elements of the statutory crime

with the requisite mens rea.

The Probation Office attempts to differentiate between participants and non-

participants.  Regardless of the applicability of this argument, it is undeniable that a criminal scheme must, at a minimum, involve more than one participant in order to be found extensive.  *See* United States v. Helbling, 209 F.3d 226 (3d. Cir. 2000) ("We note that, at a minimum, a criminal scheme must involve more than one participant in order to be found otherwise extensive; there can be no less than the defendant and one participant the defendant led or organized").

The Government cannot produce one "participant" that would meet the elements of Torture as a matter of law.  For this reason, the Defendant submits that this enhancement should not apply.

**5. Application of USSG §3C1.1 (Paragraph 49)**

The Defendant denies committing perjury or providing materially false statements to law enforcement.  On the contrary, the Defendant submits that his statements, often taken out of context by individuals without personal knowledge, were not material to the investigation and were not false.  By way of specific example, the government alleges that the Defendant denied shipping gun parts to Iraq.  This statement is true.  The Defendant never shipped gun parts to Iraq and no evidence to the contrary was presented at trial. The Defendant never denied travelling from the United States to Iraq with gun parts in his luggage.  The net result is the same in that gun parts made their way from the United States to Iraq. But the underlying statement made by the Defendant was not false.

 In addition, at trial the government's witnesses testified at trial that nothing

illegal was shipped from the United States to Iraq.  The statements, even if untrue, were not material. Other examples like the example above exist and will be addressed at sentencing.

The Defendant also denies committing perjury and denies that the government can meet its burden of proving the same.

### 6. Downward Departure Request Pursuant to USSG §2M5.2.

The Application Notes to USSG §2M5.2 state that "[t]he base offense level assumes that the offense conduct was harmful or had the potential to be harmful to a security or foreign policy interest of the United States. In the unusual case where the offense conduct posed no such risk, a downward departure may be warranted."

The Defendant was convicted of exporting parts of the M4 machine gun, a well-known weapon in the world that can be reverse engineered by a simple Google search. It was alleged that he was exporting the parts to the ethnic Kurds group in Iraq. The Kurds have been an ally of the United States since the Persian Gulf War in 1991 and the United States has been providing weapons to the Kurds for many years.  The weaponry being supplied by the United States is much more sophisticated than the M4 rifle.

The testimony established that the Defendant did not produce a fully assembled rifle.  No harm was done to a security or foreign policy interest of the United States due to the Defendant's actions.  As such, a downward departure is appropriate.

### IV.   RESERVATION

The Defendant submits this Sentencing Memorandum to address the outstanding challenges to the PSR.  The Defendant intends on filing a supplemental Sentencing Memorandum that will include character letters and arguments relating to the sentencing factors.

Respectfully submitted:

**William J. Watt, III, Esquire**
**Attorney ID# 206831**
48 South Main St., Suite 300
Pittston, PA 18640
(570) 654-4643
Fax: (570) 654-5050
Email:  bill@sfwlawyers.com