IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | NO.:  3:18-CR-97 |
| vs. | (JUDGE MARIANI) |
| ROSS ROGGIO | |
| Defendant | (ELECTRONICALLY FILED) |

**DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

The Defendant, ROSS ROGGIO, by and through his court-appointed counsel, WILLIAM J. WATT, III, ESQ., hereby files this supplemental sentencing memorandum in anticipation of his upcoming sentencing hearing.

I.  **Procedural and Factual History**

The Court is aware of the facts of the case having presided over the Defendant's trial.  Counsel will not reiterate the facts except as necessary to address the arguments contained herein.  In summary, the Defendant was convicted at trial of thirty-nine (39) counts relating to Torture (18 U.S.C. §2340 and 2340A(c)) and Violation of the Arms Export Control Act (22 U.S.C. §2778(b) and (c)) and related crimes.  The Defendant has previously objected to the Sentencing Guideline Range as determined by the Probation Office of 7,500 months.  Those objects are pending.  Regardless of the outcome of the Defendant's objections, the Defendant believes that the Court should fashion a sentence that complies with the

Sentencing Factors set forth in 18 U.S.C. §3553(a) and as more fully set forth below.

## II. SENTENCING CONSIDERATIONS AND GUIDELINE APPLICATION

As the Court is aware, in 2005 the Supreme Court determined that the sentencing guidelines are merely advisory. <u>United States v. Booker</u>, 125 S. Ct. 738, 757 (2005). Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by <u>Booker</u>,

> requires a sentencing court to consider Guidelines ranges, *see* 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, *see* § 3553(a).

<u>Booker</u>, 125 S. Ct. at 757. As such, under <u>Booker</u>, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a). The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recognize[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation." (emphasis added).

Under 18 U.S.C. § 3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." (emphasis added).

The directives of Booker and § 3553(a) make clear that courts may no longer uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the § 3553(a) factors, many of which the guidelines either reject or ignore." United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. 2005)(Adelman, J.).

In sum, in every case, a sentencing court must now consider all of the Section 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. *See* United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence to be no greater than necessary to meet for purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates

statute and is reversible, even if within guideline range).

Given the guidelines are a starting point, this Court should consider them; however, it may vary from them. It need not reduce the sentence based on some specific guidelines provisions allowing a departure. A "variance" is not a "departure". A "variance" is a sentence that deviates from the guidelines' range based on <u>Booker</u> and the sentencing factors in 18 U.S.C. 3553(a). <u>U.S. v. Gunter</u>, 462 F.3d 237, 247 n.10 (3d Cir. 2006).

In the present case, the following Section 3553(a) factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

**1.      The Nature And Circumstances Of The Offense And the History And Characteristics Of The Offender.**

      **A.      Nature and Circumstances of the Offense.**

Mr. Roggio acknowledges his shortcomings in relation to his efforts to build a facility to produce M4 rifles for the Kurds. Mr. Roggio was not a sophisticated arms dealer that had reason to believe that the governmental officials in Iraq were misleading him. He had multiple meetings with the Vice President of Iraq, the head of the intelligence department in Iraq, and the leader of the Kurds. He was routinely reassured that his effort to build an arms facility was permitted. After all, the United States' public support for the Kurds and the Iraqi government, in addition to the significant amount of defense material it supplied, would lead most

people to believe that this type of activity was permissible. The Defendant's own actions, by not attempting to hide his activities or financial transactions, is evidence of the Defendant's good-faith belief that the information he was being given by the Iraqi government was accurate. Had Mr. Roggio believed what he was doing was illegal, it is safe to assume he would not have been so transparent with his actions and his handling of the finances.

In addition, it cannot be disputed that the M4 rifle is a very common rifle that has been in existence of over 50 years. A simple Google search reveals the makeup of this rifle. There would be no need for Mr. Roggio to reverse engineer the rifle as it has routinely been reverse engineered by others with the engineering specs being available on the public domain. At trial, the Government's main witness, Siim Saar, acknowledged that very few measurements of the weapon were taken and that most of the information needed to produce the rifle was found online. The weaponry or technology Mr. Roggio was accused of supplying to the Kurds was not sophisticated and was not proprietary to the United States. China has been producing the M4 rifle for decades and has made it readily available to other nations.

In addition to the weapons facility, Mr. Roggio was convicted of Torture for his actions relating to Siim Saar. Mr. Roggio has denied torturing Siim Saar and has denied being responsible for detaining Siim Saar. On the contrary, Mr. Saar

was seized and held by the Kurdish military. Mr. Roggio did not have the power or ability to control the military. These decisions were made by the chain of command of the military. To the extent Mr. Roggio participated in the interrogation of Mr. Saar, Mr. Roggio maintains that it was done, in part, to prevent Mr. Saar from being killed.

    The Government has alleged that Mr. Roggio directed members of the military to Torture Mr. Saar and that Mr. Roggio participated in the acts of Torture. Mr. Roggio has expressed his objections to the Probation Office's findings in this regard in his initial Sentencing Memorandum. Without reiterating the arguments contained therein, Mr. Roggio submits that conditions in which Mr. Saar was detained were far from inhumane. On the contrary, he was provided a living quarters and testified to playing games with military members when he was not being interrogated. Additionally, Mr. Roggio denies the severity of the assaults that occurred against Mr. Saar. The "taser" that was used was not the type of taser we are familiar with and it contained very little force. This fact was documented in a 302 report that contained statements of one of the witnesses, but never presented at trial. Additionally, Mr. Saar's testimony that he was routinely suffocated and passed out defies medical evidence that clearly establishes that an individual cannot pass out and regain competency within a matter of seconds as alleged.

Mr. Roggio is aware that he cannot re-litigate the facts of the case. Mr. Roggio is concerned that his legal counsel did not properly present many of the arguments and evidence he brought to his counsel's attention. There are many other instances of information in Mr. Roggio's possession not being presented at trial. However, he understands that these issues are to be presented at a later stage of the proceedings. The issues are merely being raised to advise the Court that Mr. Roggio had testimony and evidence that was not presented at trial that directly relates to the conduct against Mr. Saar along with other relevant conduct.

## B. History and Characteristics of the Defendant

Mr. Roggio is fifty-five (55) years old and has no prior record points. His characteristics and history are generally described in the PSR. Despite the PSR being generally accurate with respect to his characteristics, Mr. Roggio submits there are a few errors that are worth mentioning.

1. Paragraph 3 of PSR – Mr. Roggio was on pretrial services supervision for approximately four (4) years. He also acknowledges that he contacted his ex-wife. However, Mr. Roggio submits that this contact was made with the approval of Assistant US Attorney Jenny Roberts who was aware of the nature of the contact and concurred with the same.

2. Paragraph 92 – Mr. Roggio maintains that he informed the Probation Office that he joined the military at age 16 by enlisting in the Delayed Entry Reserves in Fort Dix, New Jersey in 1986. Additionally, Mr. Roggio's discharge summary, which is in his possession, does not mention anything about "dishonored checks" as alleged in Paragraph 94 of the PSR. Mr. Roggio denies this allegation.

Mr. Roggio also disputes many unnamed witness accounts of his prior employment history as contained in the PSR. Mr. Roggio intends to address many of these statements at sentencing.

To further guide the Court with respect to Mr. Roggio's history and characteristics, multiple character letters are being submitted to the Probation Office. Mr. Roggio requests that the Court take these letters into consideration prior to imposing sentence.

2. **The Need For The Sentence Imposed To Promote Certain Statutory Objectives**

The primary directive in Section 3553(a) is for sentencing court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in Paragraph 2." Section 3553(a)(2) state that such purposes are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

>  (B)   to afford adequate deterrence to criminal conduct;
>
>  (C)   to protect the public from further crimes of the defendant; and
>
>  (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In the instant matter, Mr. Roggio suggests that his conduct relating to the arms facility should not result in a significant jail sentence. Assuming the allegations are true, it is undisputed that Mr. Roggio was attempting to provide military weapons to a military that has received military aid and equipment from the United States government since 1991. Additionally, the product being supplied is a decades old rifle that has been reverse engineered by many individuals and countries and can be easily obtained on the public domain. This was not sensitive defense technology that the United States government classified as confidential. It is the same weapon that is mass-produced by China and sold to governments around the world.

Mr. Roggio incorporates his prior arguments relating to the alleged Torture of Siim Saar.

Finally, the Defendant submits that there is no need to protect the public from further crimes of the Defendant. Regardless of the outcome, it is evident that the Defendant will be prohibited from ever travelling to foreign countries. His actions can be monitored while on Supervised Release. Given his limited prior criminal

history, Mr. Roggio submits that he is not a risk to commit further crimes or expose the public to any type of danger.

### 3. The Need to Avoid Unwarranted Sentence.

18 U.S.C. §3553(a)(6) requires that the Court avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

The Probation Office's guideline calculation results from the Torture offenses (Counts 1 & 2) being the primary source of the guideline sentence range. For this reason, the Defendant requests that the Court consider other similarly situated individuals that were convicted of Torture.

#### a. United States v. Roy M. Belfast, Jr.

Roy M. Belfast, Jr. was the son of Liberia President Charles Taylor.  Mr. Belfast was the first individual to be prosecuted under 18 U.S.C. §2340-2340A ("the Torture Act"). United States v. Belfast, 611 F.3d 783 (11th Cir. 2010). Mr. Belfast was accused war crimes that included conduct that was significantly more cruel and barbaric than the conduct alleged against Mr. Roggio.  Multiple victims were killed by Mr. Belfast and other subjected to treatment that shocks the conscious.  Concentrating only on the victims that Mr. Belfast did *not* kill, the Court imposed consecutive ten (10) year prison sentences for each such victim. (*See* Judgment of Sentence attached hereto as Exhibit "A.").  The 11th Circuit

Court of Appeal opinion detailing Mr. Belfast's conduct relating to these five (5) victims makes it clear that the allegations made against Mr. Roggio do not rise to the same level. Reviewing the disparity in conduct of Mr. Belfast and Mr. Roggio, it is requested that the Court take the sentence of Mr. Belfast into consideration when fashioning a sentence for Mr. Roggio.

### b.  United States v. Passaro, 577 F.3d 207 (4th Cir. 2009)

Passaro was a member of the United States Military that was tasked with interrogating an individual in Afghanistan following the September 11, 2001 terror attacks. During the interrogation, Passaro "brutally" attacked the victim by striking him with his hands, a Maglite-type flashlight measuring over a foot long, and kicking the victim while wearing combat boots with enough force to lift him off the ground. After suffering from the brutal attacks for two days, the victim died from his injuries while still in custody. It is undisputed that the interrogation techniques were not authorized by the CIA.

Passaro was charged with felony assault with a deadly weapon and assault resulting in serious bodily injury. Following a trial, Passaro was convicted of one count of felony assault resulting in serious bodily injury and three counts of the lesser-included offense of misdemeanor assault. He was sentenced to a 80-month

term of imprisonment.[1]

Mr. Roggio requests that the Court take judicial notice of the fact that Passaro's conduct was similar to Mr. Roggio's alleged conduct in that both were accused of assaulting an individual in custody. The difference is that Passaro inflicted significantly more physical pain and his actions caused the death of the detainee. In order to avoid disparity of sentences for individuals convicted of similar conduct, the Court should use Passaro as a guide. It is respectfully submitted that Mr. Roggio's conduct was less abhorrent than Passaro's and, as such, his sentence should be proportionately fashioned.

### c. Court Marshal Cases – Abu Ghraib, Iraq

The abuse and assault of detainees is not new in our criminal justice system. As the Court is likely aware, there have been instances during the war on terror when United States Military members were accused of assaulting and mistreating detainees. One notable case is that of Abu Ghraib Correctional facility in Iraq. Multiple military members faced Court Marshal over their actions. Due to the similarities of charged conduct, Mr. Roggio believes the punishment imposed in such cases is similar conduct that warrants consideration.

Ivan L. Frederick, II was a Staff Sergeant for the United States Army in

---

[1] The 4th Circuit Court of Appeals remanded the case for re-sentencing after Passaro initially received a sentence of 100 months. The final sentence of 80 months was imposed on remand. (www.justice.gov/archive/usao/nce/press/2010/2010-apr-06.html).

2005 when he was assigned to guard detainees at the infamous Abu Ghraib Correctional Facility in Iraq. In September, 2005, Frederick was Court-Marshalled for his treatment of prisoner detainees. Specifically, Frederick was accused of physically and sexually assaulting multiple detainees. In one instance, he was accused of punching a detainee so hard that he needed resuscitation.

Following a military trial, Frederick was convicted of eight (8) of the twelve (12) charges brought against him. The allegations against Frederick are similar to Mr. Roggio's allegations in that he was alleged to have committed an assault upon individuals in detention. After being convicted, Frederick was ordered to be imprisoned for ten (10) years in addition to being dishonorably discharged from the military. His sentence was ultimately reduced to eight (8) years as part of a plea agreement. He ultimately was released after serving three (3) years of his sentence.[2]

Specialist Charles Graner was also Court Marshaled for being the "ringleader" of the abuses that occurred at Abu Ghraib. He was ultimately convicted of assault, battery, conspiracy and maltreatment of detainees and sentenced to ten (10) years.[3]

Mr. Roggio acknowledges that a Court Marshal proceeding is different than

---

[2] https://webarchive.loc.gov/all/20090904070649/http://www.armytimes.com/news/2007/10/ap_abughraib_071001/

[3] www.nytimes.com/2005/01/16/us/ringleader-in-iraqi-prisoner-abuse-is-sentenced-to-10-years.html

federal criminal proceedings. However, given the lack of similar cases for the Court to use as a guidepost, Mr. Roggio submits that the facts and circumstances surrounding a Court Marshal proceeding is similar enough to qualify as a sentence the Court should consider in its effort to avoid disparate sentences for individuals accused of similar conduct.

## 4. CONCLUSION

For the foregoing reasons, Mr. Roggio requests that the Court fashion a sentence that considers the Sentencing Factors and is commensurate with the sentences imposed against similarly situated individuals based on the severity of their conduct.

Respectfully submitted:

Date: 4/11/24

**William J. Watt, III, Esquire**
**Attorney ID# 206831**
490 North Main Street, Suite 202
Pittston, PA 18640
(570) 654-4643
Fax: (570) 654-5050
Email: billwatt@saporitofalcone.com